[Civ. No. 8598. Third Dist. Dec. 6, 1955.]

FRED G. ROBINSON, Appellant, v. STEPHEN CUNEO, Respondent.

574

C. Ray Robinson, W. E. Craven and Robert T. McCartney for Appellant.

Preston, Braucht & George for Respondent.

VAN DYKE, P. J.—This is an appeal from a judgment denying appellant any recovery on his complaint and, responsive to a cross-complaint, quieting respondent's title to an easement or right of way for an irrigation ditch across the land of appellant. The judgment further adjudicated the relative rights of the parties to use of water flowing in the ditch.

Appellant and respondent are owners of adjoining agricultural land. The respondent's land lies to the southwest of the land of appellant. The ditch crosses appellant's land, the flow of the water being from the east to the west. The water originates in the Merced River to the east and flows across intervening lands to the easterly boundary of appellant's property. At that point and adjacent to appellant's land is a sump or dredge pond into which the water from

the ditch empties. The dredge pond was left when the land to the east of appellant's land was dredged. The dredging operation destroyed the old existing ditch but the testimony is that it was sufficiently restored as the dredging progressed so that the water still flows from the river in approximately the same way and along the same course as it did before the dredging was done. From the pond the water flows into the ditch, crosses appellant's land and goes onto the land of respondent where it is. used for irrigation purposes. In 1951 appellant leased his land to a tenant for cotton cropping on shares, intending to irrigate the crop with water brought to his land by the old ditch from the river. He claimed that the respondent so interfered with his rightful use of water as to cause the loss of the cotton crop and he sued for the damages that ensued.

Respondent answered the complaint and though he did not deny that appellant had some right to the use of water, yet he claimed that he had not interfered with such right and for that and other reasons was not responsible for the loss of the cotton crop. He also cross-complained, seeking to quiet his title to an easement across appellant's land for maintaining the ditch and flowing water along it. At the close of the trial the trial court viewed the ditch and thereafter made findings to the following effect: That appellant's title to his land was subject to an easement over and across the same for the use, maintenance, repair and control of an irrigation ditch; that this easement for more than 20 years last past had been owned by and in the possession of respondent; that the right of way for the ditch included a strip of land for a distance of 10 feet in width from the bottom "of the outside of each bank of said ditch"; that respondent had not prevented appellant from using his right to water; that respondent was not responsible for the loss of the cotton crop; that such right as appellant had to use water from the ditch was subject to the prior and superior right of respondent and limited to such water as might be flowing in the ditch in such quantities and at such time that its use by appellant would not interfere with or restrict the use of said ditch or the water therein by respondent.

Appellant contends that the findings of the trial court as to the respective rights and interests of the parties in the irrigation ditch across the appellant's land and in the waters that might flow therein are not supported by the evidence. The decree itself is somewhat ambiguous. It adjudges that

respondent, at the time the action was begun, was and still is the owner of and entitled to possession of an easement or right of way for the use, maintenance, repair and control of an irrigation ditch across appellant's land. We think this part of the decree was substantially supported by the evidence. We do not construe the decree in its use of the word "control" as indicating a control exclusive of the rights of appellant as owner of the fee or as exclusive of his rights in the use of the ditch and the water therein upon his own land, whatever those rights may be, but rather as a statement of the secondary easements that go with a primary easement over the property of another. The decree next declares that the easement includes a strip of land on which the ditch is located and in addition thereto a strip of land for a distance of 10 feet in width "from the bottom of the outside of each bank of said ditch." There was no recorded description of the easement as it existed over the lands of appellant which used this specific description as to lateral extent. However, there were grants in evidence inferentially referring to the same ditch as it was located and maintained over other lands which support the trial court's finding that across the appellant's lands it had the same lateral extent. There was also evidence that in cleaning out the ditch the operator of the dragline had done no more than to restore it to its original dimensions, which, of course, included space on both banks whereon to deposit material which had accumulated in the ditch and was being removed therefrom. In view of the fact that the ditch was in some places excavated to dimensions of 8 feet across the top, 6 feet across the bottom and a depth of 4 to 6 feet, it is a reasonable deduction by the trial court that spoil banks of the dimension fixed by the court were necessary to the proper exercise of the easement rights. In addition to the foregoing the trial court inspected the ditch and since the easement found to exist included the secondary easements of keeping the ditch cleaned and of piling the spoil on the banks thereof we think the whole record substantially supports the conclusion of the trial judge that the easement had the lateral extent adjudged. The decree further adjudged that the claim of appellant "in and to said easement and right of way is without any right whatsoever and that said cross-defendant, Fred G. Robinson, has no right, title, interest, claim or estate in or to said easement or right of way or any part thereof and that said Fred G. Robinson be and he is hereby enjoined and debarred from asserting any claim what-

ever in or to said right of way or easement across said land and premises adverse to defendant and cross-complainant." If by the foregoing it was intended to be adjudged that the appellant as owner of the servient tenement had no right, and was enjoined from claiming any right to the use of the easement strip in such way as not to interfere with the easement rights, then the decree would be against the law.

■ The owner of the servient tenement still owns the fee, even if a right of way be established across it, and as such owner he may make any use of the easement strip not inconsistent with the full easement rights of the easement owner.

■ Such easement owner owns no part of the land itself and has no right to exclude the owner from the use of any of the land, except insofar as a use interferes with his easement rights. ■ However, we do not construe the decree as doing more than adjudging that the rights of the respondent as owner of the easement are not to be interfered with by the owner of the servient tenement. We hold that nothing more was intended and nothing more was adjudged. (*Hannah* v. *Pogue,* 23 Cal.2d 849, 856 [147 P.2d 572].) The decree then proceeded to declare as follows: "provided, however, that without any obligation on the part of said defendant and cross-complainant to supply or maintain water therein and subject to the prior and superior right of said defendant and cross-complainant to the use of said water, plaintiff, Fred G. Robinson, shall have the use of such water as may be flowing in said ditch in such quantities, and at such times, and in such manner as not to interfere with or restrict the use of said ditch or the water therein by defendant, Stephen Cuneo." This is the only part of the decree which purports to adjudge the rights of the parties in the waters flowing in the ditch. Reference must be made to the evidence to ascertain whether or not this adjudication that respondent's rights in the water flowing in the ditch were superior to those of appellant may be sustained. Counsel on neither side made any special effort to ascertain what these rights of the respective parties were. There was introduced in evidence an abstract of title to appellant's land, a bulky document containing some 500 pages. We have examined this exhibit and from that examination think we understand why counsel have foreborne to enter upon a definitive examination as to the extent of water rights in the water flowing in the ditch. References to a ditch appear in many of the conveyances reflected in the abstract, the earliest references

going back to 1855 and antedating the patents to the land. The ditch is referred to as the Hamlin Ditch, the Mill Ditch and by other names, and it appears from both the abstract and the testimony that the ditch takes water from the Merced River and carries it across intervening lands and across the lands of appellant and onto the lands of respondent. It appears that in early times the water was used to run a mill in addition to being devoted in part to irrigation of the lands it traversed and that after use at the mill it was conveyed back ino the Merced River at a lower point. In none of the conveyance references that we have found in the abstract is there any description of the capacity of the ditch or its width or depth save only the provisions we have referred to as the spoil bank strip on either side of the excavation and while this in itself gives some idea as to the capacity of the ditch it is anything but accurate. The record does not anywhere show the amount of water received into the ditch at the point of appropriation from the waters of the Merced nor the amount transported by the ditch across the various properties traversed thereby, nor is there any evidence of record or otherwise herein as to how much water has been used on the various parcels of land traversed by the ditch nor as to how much acreage has been irrigated thereby. It does appear, however, as a fair inference from the record history of the ditch and from the testimony that various landowners have used the ditch in common to transport water for use upon their land. Appellant testified that of his own knowledge (he was 81 years old when he testified), he, and his father who owned the land before him, had made varied uses of the water brought down the ditch during the years since his childhood, and there was testimony that at least on some occasions considerable irrigation over a considerable area was obtained by using water thus brought to his land. The appropriation undoubtedly originated over 100 years ago and we think the record disclosed with certainty that the appropriation, whatever it may have been originally, has been exercised continuously from the first and, further, that this use of the appropriated water and of the ditch for the transportation of the same has never been singly owned by anyone, but has been, although a fluctuating, nevertheless a continuous, common use by the owners of the land across which the ditch has been maintained. One of the long-time employees of respondent testified that about the same time that the ditch was cleaned across appellant's land the dragline

used for that purpose was sent all the way to the Merced River to clean the ditch between the appellant's land and the river; and that, although the land immediately to the east of appellant's land and known as the Goldman Ranch had been dredged 10 or 12 years ago and although in the dredging the original ditch had been necessarily destroyed, yet the dredger had restored the ditch by depositing tailings for banks and sealing the banks and the bottom by the placement of "slickens" so that when the dredge left the dredging field the waterway was intact and usable. We cannot read this record otherwise than to say that it shows the water concerning which the parties were here contending was appropriated water originating in the river and carried to the contestants' lands by the ancient ditch. That being so, and nothing to the contrary appearing, there is no support for the trial court's adjudication that in respect to their several rights to the use of the water transported by the ditch respondent's rights therein are superior to those of appellant's. Insofar as the decree purports to so adjudicate, it lacks support and must be reversed.

 Turning now to the appellant's contention that the evidence does not support that part of the judgment denying him relief for the loss of his cotton crop, we think his contention cannot be sustained. The evidence was conflicting, but the following appears which sufficiently supports the trial court's denial of relief to the appellant: For many years that portion of the ditch which crosses appellant's land has been cleaned from time to time by various methods which did not restore it to its original depth. In earlier times this cleaning had been done by a "Fresno" scraper drawn by teams. Later it had been done by what the witnesses described as a "V" dragged by a tractor running along the ditch. Notwithstanding such cleaning, the ditch had gradually silted up and just before time to irrigate appellant's crop the respondent had the ditch excavated by a dragline. There was testimony, including that of the dragline operator, that the excavation had done no more than to restore the ditch both in width and in depth to its original proportions. The dragline operator testified that he had been able to ascertain the old dimensions of the ditch by observing various markings of the original ditch limits manifested by soil colorings and soil texture and was thus able to confine his excavations to the material that had silted in. There is nothing in the record to justify a holding that respond-

ent had in any way through the years lost the right to maintain the ditch in its original condition as to depth and width. Appellant complains that the deepening of the ditch served to lower the water level therein and thus to prevent him from obtaining a proper supply of water. If such lowering took place, it is shown by the record to have been caused by the restoring of the ditch to its original proportions and appellant had no right to have the ditch maintained in its semi-filled status merely because that status made it more convenient for him to take water therefrom. There is no evidence that respondent interfered with the flow of appropriated water from the river, nor, indeed, if the flow was insufficient, did appellant show that he did anything to increase the flow. In addition to the foregoing there was evidence that appellant's land, not having been leveled or in any way artificially prepared for irrigation, was not capable of such irrigation and would not have produced a crop except in limited areas. On the whole record we find substantial and, therefore, sufficient support for the trial court's judgment that appellant take nothing as against respondent.

That portion of the judgment appealed from which purports to declare the relative rights of the parties to the use of water brought to and across appellant's land by the irrigation ditch or their relative rights to the use of water from the river or which purports to regulate as between the parties the use of water in the ditch is reversed. Otherwise, the judgment is affirmed. Appellant to recover his costs.

Peek, J., and Schottky, J., concurred.

A petition for a rehearing was denied January 3, 1956.