[Civ. No. 28747. Second Dist., Div. Four. Aug. 30, 1966.]

THE CITY OF LOS ANGELES et al., Plaintiffs and Appellants, v. JOHN D. HOWARD et al., Defendants and Respondents.

Robert Arnebergh, City Attorney, Gilmore Tillman, Chief Assistant City Attorney, and O. M. Lloyd, Deputy City Attorney, for Plaintiffs and Appellants.

John L. Mace for Defendants and Respondents.

KINGSLEY, J.—This is an appeal by the plaintiffs from a judgment denying injunctive relief to compel removal of alleged obstructions on plaintiffs' easement, and to exclude the

servient owners from using the easement area as a parking lot. We affirm the judgment as entered.

The easement in question was created by reservation in a deed dated December 12, 1919, from the City of Los Angeles to certain grantees. The language of the easement is as follows: ". . . reserving unto said first parties a perpetual easement and right of way 150 feet in width for the purpose of operating, maintaining, repairing and renewing tower [*sic*] lines for the conveyance of electricity across Lot 4 of Block 57."

The property conveyed by the 1919 deed comprises a tract of land much greater than the 150 foot "floating," unfixed easement thus reserved. In 1943, the floating easement became fixed when some towers, 136 feet in height, were erected; electrical conduits were also put up between the towers. [See fn. 1] In 1960 two parcels of property were conveyed to defendants John D. Howard and J. Morgan Greene, one parcel of which is beneath plaintiffs' towers; electrical wires pass over the subject property (easement property) at a height of 60 to 70 feet.[1]

The land in question is surrounded by three public streets, each of which is at least $72\frac{1}{2}$ feet wide, and also by the area occupied by defendants' restaurant, the Carriage House. Defendants use the subject property as a parking lot for their restaurant patrons during normal luncheon and dinner hours. The parking area, which is 145 feet long at its greatest dimension is marked to provide parking spaces for only 20 cars and is so arranged as to provide three open lanes which are either 24 or 26 feet in width.

Plaintiffs sued to quiet title to their easement and prayed for an injunction against defendants, contending that the automobiles in the parking lot are an obstruction to the use of the easement. The trial court found, in part: that plaintiffs' easement to use the surface was implied and not exclusive and

---

[1] A "floating easement"—that is an easement for right-of-way such as that herein involved which, when created, is not limited to any specific area on the servient tenement—becomes "fixed" by the first usage thereof and, unless the right to change or expand the usage is expressly granted or reserved, the usage may not thereafter be modified, either in location or in degree beyond that originally established. (*Winslow* v. *City of Vallejo* (1906) 148 Cal. 723 [84 P. 191, 113 Am.St.Rep. 349, 7 Ann. Cas. 851, 5 L.R.A. N.S. 851]; Burby, *Land Burdens in California—Easements,* (1930) 4 So.Cal.L.Rev. 115, 133-134.) It follows that plaintiffs' easement in this case is limited to the maintenance of their power lines over defendants' property, together with such supplemental rights connected with that maintenance as were also reserved or are created by law.

that the parking of the automobiles was not a substantial obstruction; that defendant fee owners were entitled to use the subject property in a manner not inconsistent with the easement; that plaintiffs have the right to use the surface when reasonably necessary for the use of their easement; and that the "defendants' right to park motor vehicles upon the surface of the subject property is subject and subordinate to the easements and rights of plaintiffs as hereinbefore delineated."

Plaintiffs allege the following errors:

1) The court misconstrued the provisions of the reservation creating the easement.

2) The court erred in admitting evidence that all operational activities required in the maintenance and repair of the electrical power transmission facilities can be performed from outside the easement.

3) There is no conflict in the evidence as to material issues, and there is no substantial evidence to support the verdict.

I

Plaintiffs' primary claim is that the instrument creating the easement was misconstrued by the court. More specifically, plaintiffs seem to allege that they have an express, not secondary, easement to use the surface of the property. Plaintiffs also argue that, regardless of whether their easement to use the surface is secondary or express, parked cars below their electric wires are a substantial obstruction to the enjoyment of that easement in that they are a fire hazard and make repairs more difficult and expensive.

 The rights of the parties are governed by the following general rules of law:

"The extent of a servitude is determined by the terms of the grant, or the nature of the enjoyment by which it was acquired" (Civ. Code, § 806), and the extent of an easement is a question of interpretation (2 Witkin, Summary of Cal. Law (7th ed. 1960) Real Property, § 177, p. 1017).

 "Where an easement is founded upon a grant, as here, only those interests expressed in the grant and those necessarily incident thereto pass from the owner of the fee." (*Pasadena v. California-Michigan etc. Co.* (1941) 17 Cal.2d 576, 579 [110 P.2d 983, 133 A.L.R. 1186].)

 These same rules apply where an easement is created by a reservation[2] thereof in the original conveyance—the

---

[2] It is clear from the language of the deed, above quoted, that we deal here with a "reservation" and not with an "exception" from the grant. The plaintiffs do not contend otherwise.

theory being stated that "there is deemed a 'grant back' from the grantee of some new interest. . . ." (Burby, *Land Burdens in California—Easements* (1930) 4 So.Cal.L.Rev. 115, 122; *Coon* v. *Sonoma Magnesite Co.* (1920) 182 Cal. 597 [189 P. 271].)

Examining the words of the easement in the case at bench, we find no words specifically excluding the servient owner from use of the property or expressly stating that the surface could be used by plaintiffs. If the plaintiffs wished to retain such express rights they could have done so. In *City of Los Angeles* v. *Jameson* (1958) 165 Cal.App.2d 351 [331 P.2d 1014], the grant involved expressly included "all necessary and convenient means of ingress and egress." Therefore, the lower court in the case at bench correctly decided that plaintiffs' right to enter on the surface of the land when necessary for maintenance and repairs was a secondary or implied right.

It has been consistently held that a secondary easement which accompanies a principal easement is no more than the right to do such things as are necessary to the enjoyment of the principal easement (for instance, to make repairs, renewals and replacements). The acts must be done in a reasonable manner without an undue burden on the servient owner; also the servient owner may use his property in any manner not inconsistent with the easement so long as it does not unreasonably impede the dominant tenant in his rights. (*Ward* v. *City of Monrovia* (1940) 16 Cal.2d 815, 821 [108 P.2d 425]; see *Joseph* v. *Ager* (1895) 108 Cal. 517 [41 P. 422]; *Smith* v. *Rock Creek Water Corp.* (1949) 93 Cal.App.2d 49 [208 P.2d 705].) The rights of the dominant tenant to use the surface are not unlimited. For instance it was held in *Langazo* v. *San Joaquin Light & Power Corp.* (1939) 32 Cal.App.2d 678, 686 [90 P.2d 825], that the power company had no right to fence the right-of-way or to use it except for repairs, maintenance and construction. "The rule is that every incident of ownership not inconsistent with the easement and the enjoyment of the same, is reserved to the grantor." (*Dierssen* v. *McCormack* (1938) 28 Cal.App.2d 164, 170 [82 P.2d 212].)

Whether a particular use of the land by the servient owner is an unreasonable interference with the rights of the dominant owner is a question of fact for the trier of fact, and its findings based on conflicting evidence are binding on

appeal. (*Pasadena* v. *California-Michigan etc. Co., supra* (1941) 17 Cal.2d 576, 578; see also *City of Los Angeles* v. *Jameson, supra* (1958) 165 Cal.App.2d 351; *Robinson* v. *Cuneo* (1955) 137 Cal.App.2d 573, 577 [290 P.2d 656].)

The many cases cited by the plaintiff in which a particular use of the servient tenement was held an unreasonable interference with the dominant tenement are for the most part not applicable to the case at bench because those cases involved permanent and difficult to move obstructions such as service stations, buildings, houses, and lumber piles.

One case (*City of Los Angeles* v. *Igna* (1962) 208 Cal.App. 2d 338 [25 Cal.Rptr. 247]), involved obstructions consisting of automobiles (and many other objects, permanent and impermanent) and therefore merits our particular attention. As here, the *Igna* case involved an easement for power lines. The servient tenant conducted a trailer park on property adjacent to the easement and had carried on her business activities on that property and also on the area subject to the easement. The easement area was occupied not only by automobiles but also by house trailers, fences, barriers, old power poles, and sundry other objects.[3]

The *Igna* case is clearly distinguishable from the present case for several reasons. In the first place, the grant of the easement in *Igna* was extensive, detailed and broad, including "the right and easement for roads, ingress, egress and *other convenient purposes needed or desired* at any time," together with the right to "clear and keep said real property free from explosives, buildings, structures, brush and natural wood growth, and inflammable materials. . . ."[4]

---

[3] "The obstructions complained of were the use of the easement area by appellant for the parking of automobiles and other vehicles by the tenants of the trailer park, by the maintenance in the easement of one of said mobile homes, or trailers, and portions of other such trailers, and by the maintenance in the easement of fences, an automobile barrier, consisting of old power poles, a metal trash bin, a water pipe, or faucet, 2 feet high, a metal post and sign, 15 feet high, and the accumulation of miscellaneous items in the easement area. Appellant has blacktopped a portion thereof and has installed and maintained septic tanks, cesspools, trees, shrubbery, etc., in furtherance of her enterprise . . ." (*City of Los Angeles* v. *Igna* (1962) 208 Cal.App.2d 338, 339 [25 Cal.Rptr. 247].)

[4] The language of the deed in *Igna*, creating the easement, read as follows: " 'all and every those permanent and *exclusive* easements and rights of way . . .' (emphasis added) for the expressed purposes of constructing and maintaining, etc., 'poles, towers, wires, cables, and/or any other structures, including ground wires both overhead and/or underground necessary or convenient . . . together with the right and easement for roads, ingress, egress and other convenient purposes needed or desired at any time . . . and the right and easement to construct, reconstruct, maintain and operate same and to clear and keep said real property

Secondly, the *Igna* case, as we have indicated above, did not involve only the intermittent use by a few automobiles under circumstances where their owners were always available to move them, but the entire group of objects—many immovable —which we have listed above. In the third place, *Igna* was a judgment roll appeal in a case where the trial court had found that the use complained of did, in fact, obstruct illegally the dominant owner's use of its easement. The affirmance, under those circumstances, of a judgment based on such findings affords no authority for the present case where, on different facts, we are asked to reverse a judgment based on findings in favor of, and not adverse to, the servient tenant. Here the trier of fact has found that the parking of the automobiles herein involved, under the facts shown by this record, does not constitute an unreasonable interference with any rights of the dominant tenant. That finding cannot be reversed on appeal.[5]

▮ Plaintiffs argue that Civil Code section 1069, which states that every grant by a public body is to be interpreted in favor of the grantor, should be applied in their favor in this case. However, this rule is to be applied only in case of an ambiguity. (*Laux* v. *Freed* (1960) 53 Cal.2d 512, 522 [2 Cal. Rptr. 265, 348 P.2d 873].) It cannot be used to create an express grant of the right to use the surface, where no such express words exist. Plaintiffs claim that an ambiguity arises from the fact that the grant of easement does not specifically state whether the repairs are to be made from the surface or from overhead. Although some semanticists may argue that nearly all words are ambiguous, the easement at bench is not ambiguous in the legal sense and section 1069 of the Civil Code will not be applied to give plaintiffs a greater right than that for which they bargained.

## II

Plaintiffs allege that evidence showing that lines can be repaired from areas outside the subject right-of-way was erroneously admitted since such evidence is immaterial (*City*

free from explosives, buildings, structures, brush and natural wood growth, and inflammable materials, for the protection from fire, and/or other hazards; in, under, upon, over and across all that certain real property . . .' '' (*City of Los Angeles* v. *Igna* (1962) 208 Cal.App.2d 338, 340 [25 Cal.Rptr. 247].)

[5] Even if we were free to substitute our own judgment on such a factual matter for that of the trial court, we would reach the same result from our examination of the evidence presented below.

*of Los Angeles* v. *Jameson, supra* (1958) 165 Cal.App.2d 351), and since plaintiffs cannot be forced to relocate their easement. (*Tarr* v. *Watkins* (1960) 180 Cal.App.2d 362, 364, 366 [4 Cal.Rptr. 293].) This argument is without merit. The ability of plaintiffs to use the street is not immaterial. It is not sought to compel plaintiffs to "relocate" their easement. As we have said above, the location of the easement has long since been fixed beyond the power of either party to change. The issue here is whether or not plaintiffs, who have only a secondary and purely implied easement to use the surface, are unreasonably handicapped by defendants' activities as disclosed by this record. In considering that question, it clearly is not immaterial to consider how much use of the surface plaintiffs need to make in order to enjoy the express easement set out in their deed. Evidence tending to show that use of the surface is not an absolute necessity but merely convenient, and to measure the degree of convenience, was properly received by the trial court.

Plaintiffs rely on *City of Los Angeles* v. *Jameson, supra* (1958) 165 Cal.App.2d 351. But, in that case, not only had the grant conveyed all "necessary and *convenient*[6] means of ingress and egress" (thus removing any issue of determining *degrees* of convenience), but the obstruction complained of was a chain-link fence which effectively limited the dominant owner to patrolling its easement from outside the boundaries thereof—obviously a case of actual relocation.

 Furthermore, even if evidence on the availability of the street for repairs were improperly admitted, it is not prejudicial in this case. There was also persuasive evidence that the automobiles could be removed from the lot (by the owners or by plaintiffs' employees) and that plaintiffs could then bring their needed equipment onto the surface of the subject area. Erroneously admitted evidence is harmless where it is cumulative or corroborative of other evidence. (See *Erickson* v. *Geranson* (1932) 123 Cal.App. 575, 584 [11 P.2d 907].)

Defendants argue that, after plaintiffs' objection, plaintiffs failed to make a motion to strike and the failure to make a subsequent motion to strike constitutes a waiver of the objection. (*Estate of Wempe* (1921) 185 Cal. 557, 564 [197 P. 949].) However, in view of our opinion that such evidence was not irrelevant, and would not be prejudicial even if irrelevant,

[6]Italics added.

this question is not important and merits no further discussion.

### III

Plaintiffs argue that there is no substantial evidence to support the judgment in that the evidence shows that the parked cars are fire hazards and that the cars get in the way of making repairs. As stated above, whether or not these automobiles are obstructions (including a fire hazard) is a question of fact for the trier of fact, and the finding will not be disturbed on appeal if there is any substantial evidence to support that judgment. The testimony taken at the trial which favored defendants' position showed the transmission lines located over the subject premises have never fallen over those premises and that they have fallen only once in the entire vicinity. There was also evidence that parked automobiles have never caught fire under plaintiffs' lines or under Edison lines. An expert testified that all repairs could be made outside the subject property. Also, plaintiffs' witness Goss admitted that, if necessary, parked automobiles on the streets or subject property could be moved out of the parking lot by the owners or by the employees of the Department of Water and Power.

While there was also testimony on plaintiffs' behalf to the effect that automobiles would be in the way of the repair equipment, that restoration of the power would therefore be more difficult, expensive and lengthy, and that automobiles might be a fire hazard and their presence could increase plaintiffs' possible civil liability, the presence of plaintiffs' expert testimony does not exclude consideration of other facts which are pertinent to the issue involved (*Ortzman* v. *Van Der Waal* (1952) 114 Cal.App.2d 167, 170 [249 P.2d 846, 252 P.2d 7]), and the court may reject the whole testimony of a witness even though uncontradicted, provided the court does not act arbitrarily. (See *Hicks* v. *Reis* (1943) 21 Cal.2d 654, 659 [134 P.2d 788].) Since there was a conflict in the evidence on the issue of whether the parked automobiles present an unreasonable obstruction, and since there is substantial evidence to support the verdict of the court below, the plaintiffs' claim of insufficiency of evidence must fail.

### IV

The judgment denying injunctive relief was based, in part, on the principle of "balancing of conveniences" or "relative hardship," in that the court found that, if the injunction were granted, defendants' property would be de-

creased in value by $100,000 and that plaintiffs would derive little, if any, benefit from the injunction. We need not here consider the extent of the doctrine of balancing of the equities as applied to conduct by a servient tenant with reference to the use of land subject to an implied and secondary easement. That doctrine does not apply unless there has been, in fact, a trespass on, or an invasion of, the property rights of another (consult: *Brown Derby Hollywood Corp.* v. *Hatton* (1964) 61 Cal.2d 855 [40 Cal.Rptr. 848, 395 P.2d 896] ; *Morgan* v. *Veach* (1943) 59 Cal.App.2d 682 [139 P.2d 976]). Here, the trial court has found, and we agree, that defendants have not invaded the rights of plaintiffs. That fact is determinative of this appeal and the finding complained of may be disregarded as immaterial.

## V

Plaintiffs' opening brief includes as an appendix a brief filed in the trial court, which brief includes certain contentions relating to waiver and estoppel. However, except for this incidental inclusion, neither of plaintiffs' briefs on appeal refer to these contentions, and they were not adverted to in oral argument; we conclude that they are not before us for decision.

## VI

Plaintiffs argue, with vigor, that, if the present judgment is sustained, there could be a cumulative effect whereby all of its easements under power lines would be subjected to similar uses, to the economic detriment of the plaintiffs. Not only does this argument ignore the fact that (as the *Igna* and other cases show) not all of plaintiffs' easements are as limited as the one herein involved, but it also ignores the simple fact that plaintiff city, had it felt that it needed greater rights to exclude the servient tenant, could have drawn its deed to that effect and it also ignores the fact that the restrictions herein sought to be imposed on defendants without legal basis and without compensation are matters which plaintiffs—if their need is as great as they would have us believe—can secure by negotiation or by exercise of their power of eminent domain. We see no reason why this court should make a gift to plaintiffs of valuable rights in real property which they did not reserve in their original deed to defendants' predecessors in interest.

The judgment is affirmed.

Files, P. J., and Jefferson, J., concurred.