[Civ. No. 34224. First Dist., Div. Three. Feb. 24, 1975.]

PACIFIC GAS AND ELECTRIC COMPANY,
Plaintiff, Cross-defendant and Respondent, v.
HACIENDA MOBILE HOME PARK,
Defendant, Cross-complainant and Appellant.

COUNSEL

Guidotti & Mellana and Aldo P. Guidotti for Defendant, Cross-complainant and Appellant.

Frederick T. Searls, Charles T. Van Deusen and Robert L. Bordon for Plaintiff, Cross-defendant and Respondent.

OPINION

SCOTT, J.—Hacienda Mobile Home Park (hereinafter Hacienda) appeals from a judgment in favor of Pacific Gas and Electric Company

(hereinafter PG&E) on its complaint and against Hacienda on· its cross-complaint.

The judgment quieted PG&E's easement title across Hacienda's land and, specifically, against Hacienda's claim to a right to construct, erect or place mobile homes on the easement; enjoined Hacienda from such use on PG&E's easement, which was determined to be a 15-foot area in all directions on the ground from the pole and line of wires; and further enjoined Hacienda from using the easement in any way inconsistent with or interfering with PG&E's lawful use of the easement. The court also found against Hacienda on its claim for damages.

Hacienda, a limited partnership, owns a parcel of realty in Pleasanton on which it operates a mobile home park.

In 1943, PG&E purchased, for $225, a right-of-way from Rose Delpiano, Hacienda's predecessor in title. This right-of-way was recorded on February 15, 1943. The document conveying the right-of-way from Delpiano to PG&E was a printed form used and supplied by PG&E. A 60-kilovolt line was constructed in 1943 to supply power to the Navy Rehabilitation Center. The power line had only one pole supporting the power wires on what is now Hacienda's land.

By grant deed in June 1970 and by quitclaim deed in 1971, Hacienda took title to the property. The length of the right-of-way over Hacienda's property is approximately 580 feet. The total length of the right-of-way (some over adjacent lots which Hacienda did not acquire) is approximately 1,539 feet.

Prior to the commencement of construction of the mobile home sites at issue, Jack Christenson, Hacienda's engineer, submitted to PG&E plans for the proposed mobile home park. The plans, drawn up by Christenson, included 10 mobile home sites coming within 15 feet of either side of an imaginary line beneath the wires. Christenson testified that he was informed by PG&E that the "plans were okay" and that the "approval" occurred in July 1970. John Stanley, PG&E's local manager, would not "undertake to say" when Christenson contacted PG&E. On January 7, 1971, Stanley told Christenson by telephone that the proposed sites under the transmission lines were not permissible. Stanley did not confirm this communication in writing. He turned it over to PG&E's land department, which does not appear to have confirmed in writing the Stanley-Christenson telephone call. "In the first of February of 1971" Hacienda began grading and levelling the land.

Stanley testified that on February 10, 1971, he and Frank Meyn (another PG&E employee) met Christenson at the mobile home site. They reiterated what Stanley had told Christenson on January 7th, that it was "not permissible to have the trailers under the transmission line." Thereafter there was some discussion of relocating the power line. This discussion appears to have taken place between Hacienda and the City of Pleasanton, which issued a conditional use permit. One of the conditions was that the PG&E line be placed underground if economically feasible. Hacienda and PG&E had "numerous" communications regarding the undergrounding of the line but no disposition of the problem was reached.

In March 1971, Hacienda began "trenching" the site. In April 1971, Christenson sent a letter to PG&E requesting information on the relocation of the power line. The letter indicates that Christenson and Richard McDonnell, the general partner of Hacienda, knew for some time of the developing problem with the power line, relocation of the power line, and possible conflict with PG&E's right-of-way. Apparently, PG&E did not answer the letter.

McDonnell testified that it wasn't until April 1971, when Christenson met "several" PG&E men at the site, that he first became aware there was a problem "of this size" facing Hacienda. At that time, McDonnell testified, the concrete pads under the lines were "conservatively 80 percent" complete. He elsewhere testified that the pouring of the concrete did not begin until "maybe June," although he had been informed in writing by PG&E a month earlier that he wasn't allowed to pour the concrete. In sum, Mr. McDonnell poured the concrete because he didn't feel the pads were prohibited structures as intended by the grant from Delpiano.

In September 1971, the mobile home park opened. On September 10, 1971, PG&E filed this suit seeking a mandatory injunction compelling Hacienda to remove everything in the right-of-way area; quieting title to its "easement"; and decreeing that Hacienda has no right to make the uses of the property which were alleged.

On appeal Hacienda presents the following issues:

I. Whether the PG&E right-of-way deprives Hacienda of all use of a 30-foot-wide area across Hacienda's property.

II. Whether PG&E's procurement of the right-of-way constituted a taking or damaging of private property without just compensation.

III. Whether the trial court erred in refusing to admit certain extrinsic evidence bearing on interpretation of the grant.

IV. Whether PG&E's conduct resulted in estoppel.

I. ██ The first issue is whether Hacienda is precluded from using a 30-foot-wide area under the pole and line of wires for mobile homes.

a) ██ Any ambiguities in the easement grant should be construed against PG&E as the drafter of the instrument. (*Player* v. *Geo. M. Brewster & Son, Inc.* (1971) 18 Cal.App.3d 526, 533-534 [96 Cal.Rptr. 149]; *Benard* v. *Walkup* (1969) 272 Cal.App.2d 595, 602 [77 Cal.Rptr. 544].) This rule is to be tempered by the rule that the grant of an easement is to be liberally construed in favor of the grantee. (17 Cal.Jur.2d, Easements, § 12, pp. 136-139, citing cases.)

The relevant portions of the deed of easement provide: "Second party [PG&E], in the exercise of the rights hereby granted, shall avoid unreasonable interference with such use by first party [Delpiano, Hacienda's predecessor] and successors in estate of the aforesaid premises as is not inconsistent with the full enjoyment of said rights by second party; provided, however, that first party and successors in estate shall not erect or construct, or permit to be erected or constructed, any building or other structure, or drill or operate any water, or oil, well, within 15 feet of any line of poles and wires erected hereunder."

██ Hacienda contends that the language "within 15 feet of any line of poles and wires" means the easement is limited to a distance vertically and horizontally of 15 feet from a pole or wire. PG&E contends, and the court found, it means 15 feet "in all directions on the ground from the pole and line of wires." The language of the grant could have been more specific (*P. Gas & E. Co.* v. *Crockett L. & C. Co.* (1924) 70 Cal.App. 283, 293 [233 P. 370]: "fifteen feet in width lying equally on each side of the hereinafter described center line"). However, the clear meaning of the subject language is a 30-foot right-of-way to be measured 15 feet to each side of the line of poles and wires.

Hacienda cites *City of Los Angeles* v. *Howard* (1966) 244 Cal.App.2d 538 [53 Cal.Rptr. 274]. There the easement was for the purpose of operating, maintaining, repairing and renewing power lines for the conveyance of electricity. The fee owner wanted to use an area under the lines for a parking lot. In support of the fee owner the court said (at p.

543): "Examining the words of the easement in the case at bench, we find no words specifically excluding the servient owner from use of the property or expressly stating that the surface could be used by plaintiffs. If the plaintiffs wished to retain such express rights they could have done so. In *City of Los Angeles* v. *Jameson* (1958) 165 Cal.App.2d 351 [331 P.2d 1014], the grant involved expressly included 'all necessary and convenient means of ingress and egress.' Therefore, the lower court in the case at bench correctly decided that plaintiffs' right to enter on the surface of the land when necessary for maintenance and repairs was a secondary or implied right." There, the easement language was in terms of the city's use, not a prohibited use by the servient owner. Here, PG&E and Delpiano included words limiting the use of the surface land. We are not concerned with, as in *Howard,* a secondary or implied right.

■  As the court said in *Pasadena* v. *California-Michigan etc. Co.* (1941) 17 Cal.2d 576, 579 [110 P.2d 983, 133 A.L.R. 1186]: "Where the easement is founded upon a grant, as here, only those interests expressed in the grant and those necessarily incident thereto pass from the owner of the fee."

Hacienda erroneously characterizes the judgment as depriving it of "all use" of a 30-foot-wide easement. The court's injunction prohibited mobile homes and trailers within the right-of-way, and enjoined Hacienda from interfering with PG&E's lawful use of the property or using the property inconsistently with PG&E's lawful use.

The language in the grant to PG&E was more than specific enough to prohibit the owners of the property from erecting or constructing a building or structure within 15 feet on the ground from any line of poles or wires.

b)  ■  Hacienda contends that mobile homes are not prohibited "buildings or structures" and further, that they are not "erected" or "constructed" within the proscribed area. No case is cited by Hacienda or PG&E directly to this issue. Hacienda relies on Health and Safety Code sections 18008 and 18211. Section 18008 provides: " 'Mobilehome' is a vehicle designed and equipped to contain not more than two dwelling units to be used without a permanent foundation." Section 18211 provides: " 'Mobilehome' is a vehicle designed and equipped for human habitation, and for being drawn by a motor vehicle." Hacienda also relies on Webster's New 20th Century Dictionary (Unabridged, 2d ed.), which defines "structure" as "something built or constructed, as a building or dam." "Building," argues Hacienda, is "anything that is

built, as a house, a church, etc." Hacienda concludes that mobile homes are vehicles, or at least not structures or buildings, and therefore not outside the prohibition granted in the easement.

These definitions do not preclude a mobile home from being a building or a structure.

PG&E cites 12 Corpus Juris Secundum 378-380, Building, for the following definition: "[I]t has been said that the noun 'building' is derived from the Anglo-Saxon 'bold,' meaning a dwelling . . . that the noun 'building' implies the existence of a roof, imports tangibility, and a structure of considerable size and intended to be permanent or at least to endure for a considerable time; and so, while usually the term indicates some sort of edifice or structure located on or affixed to [the] land, it does not necessarily imply that it is fixed to the soil . . . . [¶] It has been said that 'building' in its broad or in its primary sense, refers merely to that which is built . . . . The word has been defined or employed as meaning anything constructed; a thing built; or that which is built; and more specifically as an edifice for any use."

PG&E also cites several cases defining a building or structure for various purposes: *People* v. *Buyle* (1937) 22 Cal.App.2d 143, 149 [70 P.2d 955], defined building as " 'a structure which has capacity to contain, and is designed for the habitation of, man or animals, or the sheltering of property' "; *People* v. *Miller* (1950) 95 Cal.App.2d 631 [213 P.2d 534], held that a phone booth was a structure (capable of being burglarized) since it had four walls and a roof. Other cases have held to be structures a cabin cruiser (*People* v. *Holt* (1948) 88 Cal.App.2d 42 [198 P.2d 58]); a railroad car (*People* v. *Arnest* (1933) 133 Cal.App. 114 [23 P.2d 812]); and a popcorn stand on wheels, 8 ft. by 10 ft. by 7 ft. (*People* v. *Burley* (1938) 26 Cal.App.2d 213 [79 P.2d 148]).

We hold that a mobile home or trailer is a building or structure as those two terms are used in the subject grant of easement.[1]

---

[1]We do not hold that a travel trailer, as distinguished from a mobile home, which is temporarily placed upon the easement by transients, is a building or structure, or that such use would be inconsistent with the full enjoyment of PG&E's easement. That issue was not before the trial court and we do not decide it here. Although the language of the judgment states "mobile home or homes or any trailer or trailers," the evidence addressed itself to mobile homes and the use of the words "trailer or trailers" by the court can only reasonably be construed to be synonymous with mobile home.

To place the mobile home in a fixed location within the easement is to "erect or construct a building or structure" within the meaning of the grant and is thus prohibited. Hacienda cites *San Francisco* v. *San Mateo* (1941) 17 Cal.2d 814, 819 [112 P.2d 595], for the proposition that "construct" generally imports the creation of something new and original that did not exist before. "Erect" and "construct" are synonymous. (*Watson* v. *Greely* (1924) 69 Cal.App. 643, 651 [232 P. 475].) These definitions, says Hacienda, do not encompass rolling a fully manufactured mobile home onto its transient site. The facts here, however, do not support Hacienda's conclusion. Hacienda constructed a concrete pad for each home. Water, gas, electricity, telephone lines and sewerage lines are constructed to each home. Although some mobile homes are assembled elsewhere, when the "double wides" are assembled, that is, erected, this is done on the site. The homes are skirted on the site and they are placed on piers. The totality of this evidence amply supports the court's finding that the mobile home is "erected or constructed."

c) Hacienda relies on *Atchison, T. & S. F. Ry. Co.* v. *Abar* (1969) 275 Cal.App.2d 456 [79 Cal.Rptr. 807], *Winslow* v. *City of Vallejo* (1906) 148 Cal. 723 [84 P. 191], and *Youngstown Steel etc. Co.* v. *City of L. A.* (1952) 38 Cal.2d 407 [240 P.2d 977], for the proposition that present use bears on the scope of the grant intended. These cases deal with changes in use of the easement by the easement owner. Generally, they hold that use, foreseeable use, and acquiescence fix the limits of the easement, and that the owner may use the land as long as he does not interfere with the easement holder's rights. However, what is at issue here is not a change in use by PG&E. Therefore, those cases are inapplicable.

PG&E does not appear at this time to be putting in new poles or wires. Thus any attack on possible future action is premature. (1 Cal.Jur.3d, Actions, § 82, pp. 552-553.)

■ "Whether a particular use of the land by the servient owner is an unreasonable interference with the rights of the dominant owner is a question of fact for the trier of fact, and its findings based on conflicting evidence are binding on appeal." (*City of Los Angeles* v. *Howard* (1966) 244 Cal.App.2d 538, 543-544 [53 Cal.Rptr. 274]; *Pasadena* v. *California-Michigan etc. Co.* (1941) 17 Cal.2d 576, 578 [110 P.2d 983, 133 A.L.R. 1186]; *Russell* v. *Palos Verdes Properties* (1963) 218 Cal.App.2d 754, 771 [32 Cal.Rptr. 488].)

The grant here specifically provides that PG&E shall avoid unreasonable interference with such use by the owner as is not inconsistent with the full enjoyment of PG&E's rights.

There is sufficient evidence to support the court's finding that Hacienda's intended use would unreasonably interfere with PG&E's easement and would substantially obstruct the right-of-way, and its conclusion that such use would be inconsistent with the rights granted under the easement.

Injunction here was appropriate under either restriction set forth in the grant. Since, however, the terms of the easement expressly prohibit Hacienda's intended use, we shall not dwell further on the propriety of the court's finding that such use would be inconsistent with the full enjoyment of the easement.

II. ■ Hacienda next urges, in support of its cross-complaint, that if it is enjoined from the use of the easement as a mobile home site, its property is "taken" and it is entitled to condemnation damages.

Hacienda relies on Code of Civil Procedure, section 1238, subdivision 13, which provides: "Subject to the provisions of this title, the right of eminent domain may be exercised in behalf of the following public uses:. . . 13. Electric power lines, electric heat lines, electric light lines, electric light, heat and power lines, and works or plants, lands, buildings or rights of any character in water, or any other character of property necessary for generation, transmission or distribution of electricity for the purpose of furnishing or supplying electric light, heat or power to any county, city and county or incorporated city or town, or irrigation district, or the inhabitants thereof, or necessary for the proper development and control of such use of such electricity, either at the time of the taking of said property, or for the future proper development and control thereof"; and article I, section 14 of the California Constitution, which provides for just compensation for property taken. This argument has no merit for there has been no taking. Hacienda is simply precluded from doing that which neither it nor its predecessor in title had the right to do.

Hacienda suggests that PG&E paid inadequate consideration for the easement which would prohibit Hacienda's proposed use. There is no authority for the proposition that a successor title holder of a fee can complain as to the adequacy of consideration paid to his predecessor for an easement across his land. The court, however, found that PG&E had

paid a valid, fair and reasonable consideration for its easement and right of way. Although the finding was not necessary to support the judgment, in any event there was ample evidence to support the finding. By extrapolation there was evidence that PG&E paid for the easement an amount based upon the fee value of $420 per acre for what was a "cow pasture." Adequacy of consideration is a question of fact to be determined by the trier of fact. (7 Witkin, Summary of Cal. Law (8th ed.) Equity, § 37, pp. 5262-5263 and cases cited.) Furthermore, Hacienda offered no evidence that the consideration was in fact inadequate.

There was no taking.

III. ■ Hacienda offered photographs of power lines strung over buildings and structures. These, Hacienda contends, were relevant to refute PG&E's testimony that it did not string power lines over structures and to rebut PG&E's unreasonable use of the easement argument, and further, to support Hacienda's interpretation of the grant to show that easements and buildings do coexist.

Extrinsic evidence is admissible to show the intent of the parties. (*Pacific Gas & E. Co.* v. *G. W. Thomas Drayage etc. Co.* (1968) 69 Cal.2d 33, 39-40 [69 Cal.Rptr. 561, 442 P.2d 641, 40 A.L.R.3d 1373]; *Murphy Slough Assn.* v. *Avila* (1972) 27 Cal.App.3d 649, 655 [104 Cal.Rptr. 136].) Photographic evidence may, in a proper case, be used as substantive evidence. (*People* v. *Bowley* (1963) 59 Cal.2d 855, 859-861 [31 Cal.Rptr. 471, 382 P.2d 591, 96 A.L.R.2d 1178]; *People* v. *Moran* (1974) 39 Cal.App.3d 398, 407-408 [114 Cal.Rptr. 413].) However, the proffered evidence must be relevant. It is elementary that before a court can consider "similar situations," such as the ones contended for by Hacienda, the situations must be shown to be similar. Evidence Code section 403 provides in pertinent part: "Determination of foundational and other preliminary facts where relevancy, personal knowledge, or authenticity is disputed. (a) The proponent of the proffered evidence has the burden of producing evidence as to the existence of the preliminary fact, and the proffered evidence is inadmissible unless the court finds that there is evidence sufficient to sustain a finding of the existence of the preliminary fact, when: (1) The relevance of the proffered evidence depends on the existence of the preliminary fact." (Cf. Evid. Code, § 354.)

To be relevant here as bearing on the unreasonable use and the intent of Delpiano (Hacienda's predecessor) and PG&E, Hacienda would have

had to offer to prove that the conditions under which those wires and buildings co-existed were substantially similar, if not identical. (*Braly* v. *Midvalley Chemical Co.* (1961) 192 Cal.App.2d 369, 379-380 [13 Cal.Rptr. 366].) Hacienda did not offer to prove that the grants involved in those other locations were identical or substantially similar to the grant involved here, nor that the power lines were of the same voltage as the lines involved here, nor that the homes or structures were of the same type of materials that a former PG&E engineer testified posed a hazard here. Not covering these essential connecting points which would make the offered photographs relevant, Hacienda did not carry its burden. The court properly ruled the evidence inadmissible. (Witkin, Cal. Evidence (2d ed.) Introduction of Evidence at Trial, §§ 1310-1311, pp. 1211-1212; 18 Cal.Jur.2d, Evidence, § 205, pp. 673-674; Annot., Offer of proof-ruling-error, 89 A.L.R.2d, §§ 9-10, p. 279.)

IV. ▮ Hacienda's final contention is that PG&E should be estopped to enforce the easement or made to pay damages for the cost of construction of the pads on the easement.

▮ The existence of estoppel is a question of fact and the settled rule as to the proof thereof is that the burden rests upon the party asserting such estoppel. (*General Motors Accept. Corp.* v. *Gandy* (1927) 200 Cal. 284 [253 P. 137].) Hacienda has not carried its burden.

The trial court found that PG&E informed and otherwise warned and alerted Hacienda to PG&E's easement and rights thereunder prior to commencement of construction. ▮ Before promissory estoppel can be invoked, "there must be a promise that was relied upon." (*Southern Cal. Acoustics Co.* v. *C. V. Holder, Inc.* (1969) 71 Cal.2d 719, 723 [79 Cal.Rptr. 319, 456 P.2d 975]; 1 Witkin, Summary of Cal. Law (8th ed.) Contracts, § 190, p. 175.) Here, not only did PG&E not promise anything but, as above, did warn Hacienda of its position.

▮ Before equitable estoppel can be applied, four elements must be present: " '(1) the party to be estopped must be apprised of the facts; (2) he must intend that his conduct shall be acted upon, or must so act that the party asserting the estoppel had a right to believe it was so intended; (3) the other party must be ignorant of the true state of facts; and (4) he must rely upon the conduct to his injury.' " (*City of Long Beach* v. *Mansell* (1970) 3 Cal.3d 462, 489 [91 Cal.Rptr. 23, 476 P.2d 423], quoting *Driscoll* v. *City of Los Angeles* (1967) 67 Cal.2d 297, 305 [61 Cal.Rptr. 661, 431 P.2d 245]; cf. *Felix* v. *Workmen's Comp. Appeals Bd.* (1974) 41

Cal.App.3d 759, 764 [116 Cal.Rptr. 345].) ■ However, the doctrine will not be applied to divest title to land in the absence of actual or constructive fraud on the part of the party to be estopped. (*City of Long Beach* v. *Mansell, supra,* at p. 489; 7 Witkin, Summary of Cal. Law (8th ed.) Equity, § 134, pp. 5353-5354.) The courts have proceeded with "caution and restraint" when the effect of the application of an estoppel would result in taking title from one person and vesting it in another, because such would violate the spirit, if not the letter, of the statute of frauds. (*City of Long Beach* v. *Mansell, supra,* at pp. 489-490.) Thus, "it is obvious that the doctrine should be carefully and sparingly applied, and only on the disclosure of *clear and satisfactory* grounds of justice and equity." (3 Pomeroy, Equity Jurisprudence (5th ed.) § 807, p. 203; *City of Long Beach* v. *Mansell, supra,* at pp. 489-490, fn. 23; italics added.)

■ In January, before any action was taken by Hacienda, PG&E made its position known to Hacienda. Thus PG&E cannot be charged with intending that its action (or, more accurately, nonaction) be acted upon by Hacienda. Hacienda was not ignorant of the true state of facts. ■ " 'Possession of land is notice to the world of every right that the possessor has therein, legal or equitable; it is a fact putting all persons on inquiry as to the nature of the occupant's claims.' " (*Pacific Gas & Elec. Co.* v. *Minnette* (1953) 115 Cal.App.2d 698, 705 [252 P.2d 642]; 39 Am.Jur. 242; *Bridges* v. *Cal-Pacific Leasing Co.* (1971) 16 Cal.App.3d 118, 130 [93 Cal.Rptr. 796].) ■ Hacienda had a duty to find out what PG&E asserted as its interest before it began any building. Further the recorded easement gave Hacienda constructive notice of PG&E's interest. Hacienda did not rely on the actions of PG&E. After PG&E made known its position, Hacienda could no longer rely on any inaction as indicating acquiescence or approval of Hacienda's intentions.

Neither promissory nor equitable estoppel will lie.

Judgment is affirmed.

Draper, P. J., and Brown (H. C.), J., concurred.

A petition for a rehearing was denied March 26, 1975.