[No. B228912. Second Dist., Div. Two. Aug. 6, 2012.]

STANLEY KALLIS et al., Plaintiffs and Respondents, v.
AARON SONES et al., Defendants and Appellants.

**1276**　

## COUNSEL

Grant, Genovese & Baratta and Lance D. Orloff for Defendants and Appellants.

Meller & Floyd and Harry E. Floyd for Plaintiffs and Respondents.

## OPINION

**BOREN, P. J.**—Defendants and appellants Aaron and Julie Sones share a property line with their neighbors, plaintiffs and respondents Stanley and Lucetta Kallis. The Soneses cut down a tree growing on the property line, and the Kallises sued. Following a bench trial, the trial court awarded a total of over $100,000 in damages to the Kallises.

　The Soneses now appeal, contending that the trial court improperly failed to reduce damages to account for the fact that only a portion of the tree's trunk was located on the Kallises' side of the property line. We find that the trial court did not err by declining to reduce damages. In fashioning its award, the court could and did appropriately consider the tree's unique characteristics and the great personal value it had to plaintiffs. We also find that the trial court properly doubled the amount of assessed damages pursuant to Civil Code section 3346, subdivision (a), which applies in cases of injury to trees. Accordingly, we affirm.

### Factual and Procedural Background

The Kallises and the Soneses own neighboring and coterminous lots in Los Angeles, where they each live. The Kallises acquired their property in 1955, and the Soneses acquired theirs in 1977.

For many years, possibly including years prior to the time the Kallises bought their property, there existed on or near the lots' shared property line an Aleppo pine tree. The tree likely started growing on one side of the line. Over the years, however, as the tree grew and the trunk widened, the tree's trunk came to straddle the line.

The tree grew to be quite tall—approximately 70 feet. But its defining characteristic was its form. A few feet up from the base of the tree the trunk split into two separate, but still large trunks. One of these trunks grew over

the Kallises' property and one grew over the Soneses', and each trunk supported a fully developed system of branches and limbs. These secondary trunks were distinct and far enough apart, even at the base, to allow room for a metal property line fence, which ran up and through the crotch of the tree.

In June 2008, the Soneses grew concerned that the tree could topple and cause damage. They hired workers to cut it down.[1] Instead of cutting just the portion of the tree on the Sones side of the property line, the workers cut both of the secondary trunks, leaving a large stump in the ground. From the remaining stump, one could clearly see where each secondary trunk originated, and how large each was at its base. The trunk on the Kallis side measured 23 inches in diameter, while the trunk on the Sones side was approximately 24 inches.[2] A survey conducted after the tree was cut confirmed that, at ground level, 41 percent of the stump lay on the Kallises' property, while 59 percent lay on the Soneses'.

In September 2009, the Kallises sued the Soneses for "wrongful cutting and removal of timber," trespass, and negligence. The Kallises originally sought treble and punitive damages,[3] but they were denied such relief on summary adjudication; the trial court found that the Soneses believed the pine tree was theirs and that it presented a safety hazard.

A bench trial was held on the issue of damages, with the parties stipulating that the Aleppo pine tree was on the property line and that the Soneses caused the tree to be cut down. After hearing testimony from the parties and each side's arborist expert, the trial court awarded $53,628.31 in damages to the Kallises. When doubled pursuant to Civil Code section 3346, subdivision (a), the total judgment amounted to $107,256.62.

## DISCUSSION

The Soneses appeal from the judgment. They contend that the trial court made two mistakes in deciding damages. First, they argue that because the Aleppo pine tree was located on both sides of the property line, the trial court

---

[1] The Soneses claimed they put a note in the Kallises' mailbox informing them the tree would be cut down. The Kallises contended they never received any such warning.

[2] These secondary trunks alone were larger than many trees. At the time of trial, the largest available Aleppo pine tree from a nursery in the Los Angeles area was housed in a 120-inch box. Its trunk was 14 inches in diameter.

[3] Civil Code section 3346, subdivision (a), provides that treble damages should be assessed for "wrongful injuries to timber, trees, or underwood upon the land of another" except where "the trespass was casual or involuntary," in which case damages are doubled.

was required to reduce the damages award by an amount that would reflect the proportionate percentage of the trunk that lay on the Kallises' property. Second, the Soneses contend that the trial court could only award double damages for the cost of the tree, but that the court improperly awarded double damages for installation and aftercare costs as well. We address each argument in turn.

## I

■ As a tree growing on a property line, the Aleppo pine tree was a "line tree." (*Scarborough v. Woodill* (1907) 7 Cal.App. 39, 40 [93 P. 383].) Civil Code section 834 provides: "Trees whose trunks stand partly on the land of two or more coterminous owners, belong to them in common." As such, neither owner "is at liberty to cut the tree without the consent of the other, nor to cut away the part which extends into his land, if he thereby injures the common property in the tree." (*Scarborough v. Woodill, supra,* 7 Cal.App. at p. 40.) The Soneses do not dispute that they were liable for having the tree cut down. They argue, however, that the trial court wrongly failed to account for the common ownership of the tree in assessing damages.

Although not clear from the record, it appears that the trial court may have arrived at its determination of damages in part by relying on the testimony of the Soneses' expert witness. That witness, Robert Wallace, a certified arborist, testified that the "value" of the Aleppo pine tree was $42,678.31, and that $11,080 more would be required for installation and care of the tree following its planting. Wallace's valuation of the tree did not approximate what it would cost to actually replace it—he testified that to locate, transport, and install an identical tree would cost around $1 million. Wallace instead utilized a "trunk formula method"—a mathematical formula affected by numerous criteria, including the diameter of a tree's trunk—to value the tree. After valuing the tree at $42,678.31, he testified that only 41 percent of the tree's value should be awarded to the Kallises as damages to reflect the percentage of the tree's trunk that lay on their property. For the most part, the trial court appeared to agree with the damages amounts testified to by Wallace, since the amount determined by the court ($53,628.31) approximated Wallace's aggregate amount ($53,758.31). The trial court did not agree, however, that damages should be reduced because the tree trunk lay only partially on the Kallis property.

In arguing that the trial court was obligated to consider each party's proportional interest in the trunk of the tree when determining damages, the Soneses primarily rely on a Washington state case: *Happy Bunch, LLC v.*

*Grandview North, LLC* (2007) 142 Wn.App. 81 [173 P.3d 959] (*Happy Bunch*). In *Happy Bunch*, the defendant wrongfully cut down 12 large trees on or near a property line shared with the plaintiff. The parties stipulated to the method used by the plaintiff's expert arborist, which assessed the value of the cut trees at $40,033. (*Id.*, 173 P.3d at p. 962.) The trial court accepted this stipulated valuation, and then reduced the amount awardable to the plaintiff by multiplying the total value of the trees by the proportionate percentage of the tree trunks growing on the plaintiff's property. (*Id.* at p. 965.) In affirming the award, the appellate court found that where a defendant violates Washington's timber trespass statute "and the plaintiff seeks damages based upon the value of the cut trees, the correct measure of damages is calculated by multiplying the trees' value by the percentage of the trees' trunks that had been growing on the plaintiff's property." (*Ibid.*)

We believe that the method used to determine damages in *Happy Bunch* was proper. But simply because the method was appropriate in one case·does not mean that it always must be applied. *Happy Bunch* is distinguishable from the instant case. In *Happy Bunch*, the parties stipulated to the valuation method used by the arborist expert and his calculated valuation number. (*Happy Bunch, supra*, 173 P.3d at p. 962.) In the instant case, the parties did not stipulate to either a method or a valuation. Due to this lack of stipulation, the trial court here had more leeway to determine the amount that would adequately compensate the Kallises for their loss. Furthermore, unlike in *Happy Bunch*, plaintiffs here showed (i) the tree's unusual size and form made it very unusual for a "line tree"—it functioned more like two trees growing on the separate properties; (ii) the tree's attributes, such as its broad canopy, provided significant benefits to the Kallis property; and (iii) the Kallises placed great personal value on the tree. The trial court correctly recognized that it could account for these factors when determining damages, including whether or not damages should be reduced.

■ "Where there is more than one legally permissible measure of damages, the trial court's choice of a particular measure under the specific circumstances of the case is a matter of discretion." (*SCI California Funeral Services, Inc. v. Five Bridges Foundation* (2012) 203 Cal.App.4th 549, 562 [137 Cal.Rptr.3d 693]; see *GHK Associates v. Mayer Group, Inc.* (1990) 224 Cal.App.3d 856, 873 [274 Cal.Rptr. 168].) The general measure of damages for tortious injury to property is "the amount which will compensate for all the detriment proximately caused thereby." (Civ. Code, § 3333.) Putting aside the automatic doubling and potential tripling of damages, the measure for damages to trees is substantially similar to that for property in general—the

amount that "would compensate for the actual detriment." (Civ. Code, § 3346, subd. (a).)

■ There is no single fixed and inflexible rule for determining the measure of damages for injury to trees. (*Heninger v. Dunn* (1980) 101 Cal.App.3d 858, 862 [162 Cal.Rptr. 104].) Diminution in value—i.e., the difference between the value of property before and after injury—is one measure that has been used. (*Ibid.*) It is not the only measure, though. Restoration costs, even those that exceed diminution in value, may be awarded if " 'there is a reason personal to the owner for restoring the original condition' " or " 'where there is reason to believe that the plaintiff will, in fact, make the repairs.' " (*Id.* at p. 863.)

The trial court here found an award of restoration costs was appropriate. Its September 7, 2010 "order re statement of decision" stated: "Plaintiffs have resided upon their property for dozens of years. The court has reviewed photographs which illustrate that the [Aleppo] pine cut by the defendants shaded a playhouse erected for the use of plaintiffs' children and grandchildren, and also shaded the entire home with its broad canopy—a canopy of as much or greater value than mere partial ownership of the trunk itself. It was, in essence integral to the property, if not of economic value (there being no showing of diminution of economic value) but of great 'personal' value . . . . The court believes that given this 'personal' valuation of the tree, there is a substantial likelihood that Plaintiffs will restore a tree of similar size in an area wholly on their property, as has been testified to. For these reasons, and based upon applicable case authority, while recognizing the tenancy in common, the court finds that there is a substantial basis for the court to apply a requirement of 'restoration' damages as the more reasonable basis of assessment in the instant case."

Given the personal value placed on the tree by the Kallises and the likelihood that they would restore a tree of similar size, the trial court's decision to award restoration costs was proper. Substantial evidence supported the finding that the Kallises enjoyed significant and personal benefits from the Aleppo pine tree. The secondary trunk system that overhung the Kallis property was larger than most full-sized trees, and the tree provided a broad canopy that was highly valued and important to the family. Due to these unusual factors, the trial court was not required to reduce its award just because part of the tree lay on the Soneses' property. If the tree had only been a potential source for lumber, or even just a screen between the properties, then a reduction to account for the location of the base of the tree likely would have been appropriate. But to impose such a reduction here would be to disregard the unique, personal benefits the tree provided.

Furthermore, the amount of damages necessary to compensate plaintiffs was a matter committed to the trial court's discretion. (See *Toscano v. Greene Music* (2004) 124 Cal.App.4th 685, 691 [21 Cal.Rptr.3d 732].) Due to the tree's large size and the advantages it provided to the Kallis property, the trial court did not err by awarding $53,628.31 in damages (prior to automatic doubling), an amount that would allow the Kallises to restore their property to reasonably approximate its former state. (See *Heninger v. Dunn, supra,* 101 Cal.App.3d at pp. 864–865 [plaintiff may recover reasonable costs of replacing destroyed trees with identical or substantially similar trees].) Any reduction in damages would have been contrary to the intent of restoration.

## II

After doubling the amount of damages pursuant to Civil Code section 3346, the judgment totaled $107,256.62. The Soneses' second argument is that the trial court wrongly calculated the amount of double damages that the Kallises were entitled to receive. They submit that the trial court was required by statute to double the amount of damages determined for the tree, but that the court should not have doubled the amount for planting and aftercare.

Preliminarily, it should be noted that the record does not state how much was awarded for planting and aftercare. In their briefs, the Soneses claim the court awarded $42,678.31 for the tree and $10,950 for aftercare and installation costs. These numbers do not appear anywhere in the trial court's orders or rulings, however. It is clear that the trial court did award some amount for "aftercare, cost of crane for installation," but how much of the $53,628.31 that amount constituted is uncertain.

In any event, the Soneses' argument is not supported by the statute on which they rely. Civil Code section 3346, subdivision (a), states, in pertinent part: "For wrongful injuries to timber, trees, or underwood upon the land of another, or removal thereof, the measure of damages is three times such sum as would compensate for the actual detriment, except that where the trespass was casual or involuntary, or that the defendant in any action brought under this section had probable cause to believe that the land on which the trespass was committed was his own or the land of the person in whose service or by whose direction the act was done, *the measure of damages shall be twice the sum as would compensate for the actual detriment . . . .*" (Italics added.)

Because the trial court awarded restoration damages, finding that the Kallises were likely to replace the tree, the amount required to compensate for the actual detriment would necessarily include installation and aftercare costs. The court therefore did not err by doubling the full amount.

## DISPOSITION

The judgment is affirmed.

Doi Todd, J., and Chavez, J., concurred.

Appellants' petition for review by the Supreme Court was denied November 14, 2012, S205422.