Filed 9/2/14  Albert v. Baccouche CA2/5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| SHELLY ALBERT,<br><br>     Defendant and Appellant,<br><br>     v.<br><br>HENRI BACCOUCHE,<br><br>     Plaintiff and Respondent. | B249798<br><br>(Los Angeles County Super. Ct.<br> No. EC054848) |

APPEAL from a judgment of the Superior Court of Los Angeles, Donna Fields Goldstein, Judge.  Affirmed.

Law Offices of Kerry S. Schaffer and Kerry S. Schaffer for Plaintiff and Respondent.

Gibson Law and Richard Gibson for Defendant and Appellant.

_____

Defendant and appellant Shelly Albert appeals from a judgment in favor of plaintiff and respondent Henri Baccouche following a bench trial. Albert contends the trial court erred in ordering her fence removed from an easement on her property, and awarding compensatory and punitive damages to Baccouche. Albert further contends that the court erred in awarding costs against her under Code of Civil Procedure section 998. We affirm. Substantial evidence supports the court's finding Albert unreasonably interfered with the easement, and the court did not abuse its discretion in issuing an injunction ordering removal of the fence. The compensatory and punitive damages awarded to Baccouche are supported by substantial evidence. Lastly, Albert did not appeal from the order awarding costs under Code of Civil Procedure section 998, and we therefore have no jurisdiction to address the issue.

**FACTS**

Albert and Baccouche are neighboring property owners. Albert purchased property at 11203 N. Rhodesia Avenue in Sunland in 2003, with the intent to build a residence. The northern part of Albert's property line runs along a dirt roadway that leads to the contiguous property at 8041 Denivelle Road.

In 2004, Baccouche purchased property at 8001 Denivelle, which is comprised of three lots of approximately seven acres. In 2005, Baccouche purchased an adjacent property at 8041 Denivelle, which is comprised of four lots of approximately 3.3 acres. Both properties are accessed from Denivelle Road, which is paved until it reaches 8001 Denivelle, where it becomes a dirt road that leads to 8401 Denivelle. The dirt road provides the only existing access to 8041 Denivelle.

Baccouche purchased both properties as investments, intending to develop them for sale as separate residential lots. He went to both properties two to three times a year for the purpose of brush clearance, and conducted various geological inspections in anticipation of developing the land. Albert initially gave Baccouche access to the dirt road for a bulldozer and backhoe required to perform these tasks.

2

**Roadway Easement**

Baccouche's deed for 8041 Denivelle included a roadway easement for "road purposes" over Albert's property.[1] This easement allowed access along the dirt road to 8041 Denivelle, as well as another property along the dirt roadway without other access. The easement is 26 feet wide and approximately 150 feet long. It spans a 13-foot strip on the northern boundary of Albert's property and a 13-foot strip of the southern boundary of Baccouche's property. The dirt road currently is narrower than the overall easement but is within the plotted easement except where it terminates.[2]

At the time she purchased her property, Albert was aware of the easement, as it was predominately referenced on her deed. When Albert applied for her building permits, she signed a document under penalty of perjury "that the proposed work will not destroy or unreasonably interfere with any access or utility easement belonging to others and located on my property. But in the event such work does destroy or unreasonably interfere with such easement, a substitute easement satisfactory to the holder of the easement will be provided."

Albert erected a temporary chain-linked fence along the perimeter of her property for safety reasons when she began construction of her residence in 2006.

---

[1] In 1938, a grant deed was recorded reserving this roadway easement. The precise boundaries of the easement were set out in the grant deed by reference to a survey map.

[2] Susan Kohn owns the property contiguous to both Albert and Baccouche's property. The southern part of her property also borders the unpaved portion of Denivelle Road and has no street access except through the dirt roadway. Her property has the same easement over Albert's property, and Baccouche has a 13-foot by 150-foot easement over the southern portion of Kohn's property. Together, Baccouche and Kohn's easements create a 26 foot wide, approximately 150 foot long easement for a roadway ingress and egress to her and Baccouche's property. Kohn is not a party to these proceedings.

3

Albert's fence was placed "directly in the middle of the [dirt portion of Denivelle] road," enclosing the portion of the easement on her property. Albert said she would take the fence down "'when the construction is finished. . . .'" Nevertheless, Baccouche objected to the fence, in writing, over a long period of time. He expressed his objection to having the easement cut off and demanded that she remove the fence. Baccouche was concerned because the dirt road was his only access to the 8041 property, and he would like to use the entire 26-foot easement for roadway purposes.

The dirt roadway had been used by the Los Angeles Fire Department as a fire road for acess to the hillside in the area. Sometime in or about 2005, Albert asked the Los Angeles Department of Public Works to build a fire gate at the entrance to the dirt roadway. Albert testified that she did this because she was concerned for her safety, and to prevent people from thowing trash onto her property. Albert thereafter put a lock on the gate to prevent access to the dirt road leading to 8041 Denivelle.

Around 2009, when Albert's residence was built, she replaced the temporary fence with a permanent fence with cement footers around the perimeter of her property. The fence not only permanently enclosed the portion of the easement on her property, but also encroached on the southeast portion of Baccouche's property. When Baccouche learned of the encroachment on his property, he demanded in writing that it be removed. He made several such demands. He also continued to demand that she remove the fencing that blocked his access to the easement. Albert refused Baccouche's demands. After several email communications back and forth that did not result in a resolution, Baccouche himself removed the fence that was encroaching on his property.

Albert did not walk the property line to determine where the permanent fence should go, but relied on the crew she hired to determine the property line. She was aware that the fence would enclose the easement on her property. Albert's testimony that she erected the fence for public safety because she cannot get homeowner's insurance without it was stricken by the court as inadmissible hearsay. Albert knew about the easement that ran 13 feet onto her property, although she was unaware that she had built her house so close to the easement. The retaining wall surrounding Albert's property is

4

very close to the easement, and in one area, is within a few feet of the easement. The engineer who built the retaining wall knew about the easement, but did not consider the weight of a potential roadway along the entire width of the 26-foot easement when calculating stress on the retaining wall. He opined that depending on how the roadway is built, it might place too much stress on the retaining wall.

All the civil engineers who testified agreed that constructing a roadway over the 26-foot easement is feasible. The experts only disagreed on the cost and how much involvement by the City will be necessary.

Albert testified that notwithstanding the easement, nor the affirmation given on her building permit, she will not remove her fence until all plans for a paved roadway are completed and permitted by the City, and will not provide a replacement easement across her property even if the construction of her extensive retaining wall causes the construction of the roadway over the easement to be impossible or prohibitively expensive.

At some point after 2009, Albert extended the reach of her fence by adding pieces to attach to the fire gate, so that access to the dirt roadway, which blocked car access through the locked gate, also blocked foot access to 8041 Denivelle.

Albert harassed the crews Baccouche hired to clear the brush on his property as required by the City. As a result of the harassment, several brush clearance crews would not work his property. In one instance, Albert parked her car in the middle of Denivelle Road to prevent access up the dirt road. Baccouche's realtor and a brush crew had come to give an estimate of the cost to clear brush on Baccouche's property. She demanded to know who was at the gate attempting to enter the dirt road leading to 8041 Denivelle, a portion of the easement which was not her property. She stated, "'we don't want you here—the community doesn't want you here, go away,'" and prevented access to the road. Baccouche's realtor testified that Albert's hostility commenced after Baccouche planned to develop houses on his properties.

Baccouche currently has his properties listed for sale. The only access to 8041 Denivelle remains the dirt portion of Denivelle Road. If the property is to be developed,

5

any development will have to be through Denivelle Road, at least initially. Although Baccouche has had plans drawn up to access his property through another road behind his property, he has testified that to build new access through the alternative road is cost prohibitive. These plans have received City approval.

**Olive Trees**

Approximately nine olive trees sit at the border of Albert and Baccouche's property. Albert and Baccouche dispute whether there was any damage to the boundary trees and if so, the extent of the damage.

Baccouche's licensed surveyor determined ownership of the trees by calculating the location from the waist height of the trees through aerial observation. This placed the trees either on the property line or on Baccouche's property. Albert's licensed surveyor placed the trees on the survey map based on the locations of the main trunk as it meets the ground. By this measurement, most of the trees are on the property line, with one tree exclusively on Baccouche's property.

Property owners in the area are required to do regular brush clearing as they are located in a fire district. Albert testified that she was give notice by the Fire Department that she had to conduct brush clearance and cut the olive trees, although she produced no such notification at trial. The City requires that the foliage on lower branches of tall trees be cleared six feet from the ground, but fruit trees are specifically exempted.

In connection with her 2009 brush clearing efforts, Albert had the olive trees located on the property line substantially pruned. She did not contact Baccouche before the pruning and did not engage him in the process. Prior to the pruning, the trees had a large canopy of greenery at the top of the tall trunks. The trees looked substantially different after the pruning, with a more bush-like appearance.

Both parties presented testimony from retained expert arborists regarding whether the trees were damaged by the pruning in 2009. Baccouche's certified arborist, whose specialty is in damage appraisal and evaluation, used a complex computer program to

6

determine the devaluation of the trees as a result of the 2009 cutting. He testified that instead of just cutting foliage to six feet off the ground as required by the Fire Department, large trunks were cut off at the property line resulting in a reshaping of the trees to their current bush-like state. Using factors such as conditions before the pruning, he testified that the trees were devalued as a result of damaging cuts by $15,980. Albert's expert arborist testified that the trees were not damaged at all.

## PROCEDURAL HISTORY

Baccouche filed a complaint on January 3, 2011, a first amended complaint on March 9, 2011, and then a second amended complaint on August 29, 2011. In the operative second amended complaint, Baccouche alleged five causes of action: (1) trespass to real property and trees, (2) negligent damage to trees, (3) abatement of private nuisance, (4) declaratory relief, and (5) quiet title.

Albert filed a cross-complaint against Baccouche. At a mandatory settlement conference on July 13, 2012, the parties executed a stipulation for settlement in which Albert received $1,500 from Baccouche and agreed to dismiss her cross-complaint with prejudice. The parties also agreed to a general release under Civil Code section 1542 and that each side would bear its own fees and costs. Albert agreed to file her request for dismissal with prejudice within five days of receipt of the settlement check. However, when Albert contacted Baccouche's counsel to advise that she was reneging on the terms of the settlement of the cross-complaint, Baccouche sought a court order enforcing the judgment under Code of Civil Procedure section 664.6.

A bench trial began on August 27, 2012, and concluded on October 2, 2012. On April 11, 2013, the trial court issued a final statement of decision in favor of Baccouche. The court entered a judgment for damages, abatement of private nuisance, declaratory relief, and quiet title on May 7, 2013.

The court found that Albert willfully and unreasonably interfered with Baccouche's easement to his detriment. The easement is the only access to his property.

Albert fenced off the easement on her property and further fenced off all access to Baccouche's property by tying her fence to the existing fire gate. This additional fencing prevents all vehicles and foot traffic to 8041 Denivelle, and prevented Baccouche from performing the necessary brush clearance, resulting in penalties from the City. The court further found that Baccouche will need access to the easement if construction commences on his property or if his property is sold, as he must be able to pass on an unobstructed easement to a successor owner. "The remaining roadway accessible to [Baccouche] is only wide enough for cars and pickup trucks . . . and is insufficient to support the development of the 8041 property." The court awarded Baccouche $10,000 in punitive damages, stating Albert's "intentional blocking of [Baccouche's] property and his easement is despicable conduct." As to the olive trees, the court found Baccouche's expert opinion more reliable and credible. The court awarded Baccouche on his first cause of action for trespass to property and trees in the amount of $43,000, representing the damage to the trees at $15,980 doubled pursuant to Civil Code section 3346, $8,040 for lost aesthetics and $3,000 for the cost of enforcing his property rights against trespass.

Albert filed a motion for new trial on May 16, 2013. On May 21, 2013, Baccouche filed a motion for attorney fees pursuant to Code of Civil Procedure section 1021.9, along with a memorandum of costs which included expert witness fees in the amount of $6,329.74 pursuant to Code of Civil Procedure section 998. On June 10, 2013, Albert filed an opposition to Baccouche's memorandum of costs and moved to tax costs. On June 14, 2013, Baccouche filed an opposition to Albert's motion to tax costs. The trial court held a hearing on June 26, 2013. The court found that Albert had failed to establish grounds to tax any amount from Baccouche's memorandum of costs, and dismissed Albert's motion to tax costs in its entirety. The court also denied Albert's motion for new trial, along with Baccouche's motion for attorney fees. On July 18, 2013, the court issued an order regarding the motions for attorney's fees, to tax costs, and for a new trial. A notice of entry of the court's order was filed on July 24, 2013.

On July 1, 2013, Albert filed her notice of appeal from the judgment entered on May 7, 2013. No notice of appeal was filed from the July 24, 2013 order awarding costs.

8

## DISCUSSION

### Roadway Easement

Albert contends the trial court erred in ordering her fence removed from the easement because the fence did not unreasonably interfere with Baccouche's use of the easement. She also contends the court failed to properly balance all of the hardships between the parties when fashioning the injunction. Neither contention has merit.

"An easement is a restricted right to specific, limited, definable use or activity upon another's property, which right must be less than the right of ownership." (*Mesnick v. Caton* (1986) 183 Cal.App.3d 1248, 1261, italics omitted.) The property that is benefitted by an easement is the "dominant" tenement or estate; the property that is burdened by an easement is the "servient" tenement or estate. (Civ. Code, § 803.) In this case, Baccouche's property is the dominant tenement, and Albert's property is the servient tenement.

"[T]raditional rules of property law forbid overburdening an easement or servitude and unreasonable conduct in exercising rights under either. '[T]he owner of a dominant tenement must use his easement and rights in such a way as to impose as slight a burden as possible on the servient tenement.' (*Barker v. Pierce* (1950) 100 Cal.App.2d 224, 226.)" (*Locklin v. City of LaFayette* (1994) 7 Cal.4th 327, 356, fn. 17.) At the same time, the owner of the servient estate retains "[e]very incident of ownership not inconsistent with the easement and the enjoyment of the same . . . . [¶] The owner of the servient estate may make continued use of the area the easement covers so long as the use does not 'interfere unreasonably' with the easement's purpose." (*Scruby v. Vintage Grapevine, Inc.* (1995) 37 Cal.App.4th 697, 702-703 (*Scruby*).) Whether a particular use unreasonably interferes with an easement is a question of fact. We review the trial court's findings for substantial evidence. (*Pacific Gas & Elec. Co. v. Hacienda Mobile Home Park* (1975) 45 Cal.App.3d 519, 528.)

9

Here, the roadway easement created by the grant deed expressly provides Baccouche ingress and egress rights along the dirt portion of Denivelle Road leading to his property. When an easement is based on a grant, as it is here, the grant gives the easement holder both "those interests expressed in the grant and those necessarily incident thereto." (*Pasadena v. California–Michigan etc. Co.* (1941) 17 Cal.2d 576, 579.) An easement for roadway use "grants a right of ingress and egress and a right of unobstructed passage to the holder of the easement . . . . When the easement is 'nonexclusive' the common users 'have to accommodate each other.' (*Applegate v. Ota* (1983) 146 Cal.App.3d 702, 712.) An obstruction which unreasonably interferes with the use of a roadway easement can be ordered removed 'for the protection and preservation' of the easement. (*Id.* at pp. 712-713.)" (*Scruby, supra,* 37 Cal.App.4th at p. 703.)

The trial court's determination that Albert's fence unreasonably interfered with this right of access was supported by substantial evidence, and we therefore will not disturb the court's judgment. The court expressly found, "Albert has willfully and unreasonably interfered with . . . Baccouche's easement to his detriment. This easement provides the only access to his land. Not only has . . . Albert fenced off the easement on her property, but the evidence shows she has further fenced off all access to . . . Baccouche's property by tying her fence to the exiting fire road access fence with additional fencing to prevent any vehicle or even foot traffic to . . . Baccouche's land." Moreover, the court found that "[t]he continued existence of the fence on the road access easement to [Baccouche's] property is an impediment to" selling his property, "and any future efforts to develop his property and build a code complaint paved access road."

Albert argues that the existing dirt road, which is predominately over Baccouche's property, provides access by car or pickup truck to 8401 Denivelle. However, this dirt road accessible to Baccouche is *only* wide enough for cars and pickup trucks, and is insufficient to support the development of 8041 Denivelle. Prior to the fence being constructed, Baccouche required use of the easement for access by a bulldozer and backhoe to repair the level dirt road and dig trenches for soil exploration. That access was cut off by Albert's fencing shortly thereafter. Baccouche will need access to the

10

easement if construction is commenced on his property and will require use of the roadway easement to meet code requirements. If sold, his property must be able to pass on an unobstructed easement to a successor owner.

Albert relies on *Scruby, supra,* 37 Cal.App.4th 697 for the proposition that an owner of the dominant tenement does not have the right to use every portion of the easement. In *Scruby*, a nonexclusive easement of 50 feet for roadway and utilities was at issue. (*Id.* at 700.) The plaintiff had access to the easement to use as a roadway, but the servient property owner also used part of the 50-foot easement for equipment for its business, to which the plaintiff objected, claiming an exclusive right to the entire easement property without any use by the servient property owner. (*Id.* at 701-702.) The appellate court reaffirmed the general rule that the owner of the servient estate may use the easement "so long as the use does not 'interfere unreasonably' with the easement's purposes." (*Id.* at pp. 702-703.) The court reasoned that the plaintiff's access to the easement was not interfered with, and there was sufficient roadway for all purposes. (*Id.* at 704.) The situation here is far different. Unlike in *Scruby*, where the plaintiff had reasonable use of the easement for roadway purposes, Baccouche has no access to the easement on Albert's property for any purpose at all. Even if Albert removes the fencing around the fire gate and removes the lock, only a car or pickup truck can access the road leading to 8041 Denivelle, preventing proper access for developing the properties and constructing a code compliant roadway. Consequently, the trial court's finding that Albert's fence erected on the easement unreasonably interferes with Baccouche's right of ingress and egress was fully supported by substantial evidence and is binding on appeal. (*Pacific Gas & Elec. Co. v. Hacienda Mobile Home Park, supra,* 45 Cal.App.3d at p. 528.)

Albert argues the trial court did not properly balance all of the hardships between the parties when fashioning the injunction because "she will suffer immediate and irreparable harm" if the fencing around her portion of the easement is removed. (See, e.g., *Linthicum v. Butterfield* (2009) 175 Cal.App.4th 259, 266-267 ["The trial court's exercise of discretion to determine whether to grant or deny an injunction is based on

11

equitable principles. [Citation.] . . . In exercising that discretion, the court must consider the conduct and intent not only of the defendant, but also of the plaintiff. [Citation.] The trial court's consideration of the conduct of the parties must in turn be made in light of the relative harm that granting or withholding an injunction will do to the interests of the parties"].) Albert's claim that the fence is necessary for her protection and to keep undesirables from entering her property is unpersuasive. The fence around her property could have been built without enclosing the 13-foot easement. Additionally, the trial court did not admit Albert's hearsay statement that she cannot get homeowner's insurance without this fence. Substantial evidence supports the court's finding that the fence not only prevents Baccouche from developing his properties but also hinders their sale, as it is the only current means of ingress-egress. The court did not abuse its discretion in ordering Albert to remove her fence.

**Punitive Damages**

Albert contends the trial court erred in finding that Albert interfered with Baccouche's use of the easement, and therefore Baccouche was not entitled to punitive damage for trespass to real property. We disagree.

The trial court's finding that the interference was "intentional and malicious," provides a basis for awarding Baccouche punitive damages. Punitive damages are available for malicious interference with an easement. (See *Zimmer v. Dykstra* (1974) 39 Cal.App.3d 422, 437-438.) An award of punitive damages requires a finding, by clear and convincing evidence, "that the defendant has been guilty of oppression, fraud, or malice . . . ." (Civ. Code, § 3294, subd. (a).) Malice, for this purpose, is defined as "conduct which is intended by the defendant to cause injury to the plaintiff or despicable conduct which is carried on by the defendant with a willful and conscious disregard of the rights or safety of others." (*Id.,* subd. (c)(1).)

The record contains ample evidence supporting the award of $10,000 in punitive damages. The trial court reasoned "[t]his intentional blocking of [Baccouche's] property

and his easement is despicable conduct. . . . ." Albert has refused to give Baccouche access to the easement since erecting the permanent fence in 2009. She went so far as fencing off the fire gate, thereby blocking Baccouche access to his portion of the easement both by car and on foot. Albert went on to tell Baccouche's realtor "'we don't want you here—the community doesn't want you here, go away.'" Moreover, Albert has blocked brush crews headed to Baccouche's property, which has caused him to incur fines from the City. Under the circumstances, the award of punitive damages is supported by substantial evidence. (*Zimmer v. Dykstra, supra,* 39 Cal.App.3d at p. 439.)

**Tree Damage: Civil Code Section 3346, Subdivision (a)**

Albert contends that the court erred in relying on Civil Code section 3346, subdivision (a), and *Kallis v. Sones* (2012) 208 Cal.App.4th 1274 in assessing damages for Albert pruning the olive trees. Albert also argues that the court erred in failing to reduce the damages and then doubling it under Civil Code section 3346, subdivision (a).

Albert first contends for the first time on appeal that the court erroneously relied on Civil Code section 3346, subdivision (a), to assess any damage to the olive trees, and that the court should have relied on Civil Code section 834 as it applies to boundary trees by co-tenants. However, the court relies on both Civil Code sections 834 and 3346 as they are consistent with one another in assessing tree damage. (See, e.g., *Kallis v. Sones, supra,* 208 Cal.App. 4th at pp. 1278, 1280.) Regardless, Albert never denied the applicability of Civil Code section 3346 at trial, in her objections to the proposed statement of decision, or her motion for new trial. Accordingly, Albert forfeits this claim of error on appeal. (*In re S.B.* (2004) 32 Cal.4th 1287, 1293, superseded by statute on other grounds as stated in *In re S.J.* (2008) 167 Cal.App.4th 953, 962.) Any error was also invited, as Albert cited *Kallis v. Sones, supra*, 208 Cal.App.4th 1274 to support her position in closing argument without any reservation as to its application of Civil Code section 3346. (See, e.g., *Geffcken v. D'Andrea* (2006) 137 Cal.App.4th 1298, 1312 [the invited error doctrine is an application of the estoppel principle that where a party by his

13

or her conduct induces the commission of error, he or she is estopped from asserting it as a ground for reversal on appeal].)

Albert does not dispute that she was liable for having the olive trees pruned, including the one olive tree that was only on Baccouche's property. She argues, however, that the court failed to account for the common ownership of the eight trees in assessing damages. As trees growing on a property line, eight of the olive trees were "line trees." (*Scarborough v. Woodill* (1907) 7 Cal.App. 39, 40.) "Civil Code section 834 provides: 'Trees whose trunks stand partly on the land of two or more coterminous owners, belong to them in common.' As such, neither owner 'is at liberty to cut the tree without the consent of the other, nor to cut away the part which extends into his land, if he thereby injures the common property in the tree.' (*Scarborough v. Woodill, supra,* at p. 40.)" (*Kallis v. Sones, supra, 208* Cal.App.4th at p. 1278.)

"Where there is more than one legally permissible measure of damages, the trial court's choice of a particular measure under the specific circumstances of the case is a matter of discretion." (*SCI California Funeral Services, Inc. v. Five Bridges Foundation* (2012) 203 Cal.App.4th 549, 562; *GHK Associates v. Mayer Group, Inc.* (1990) 224 Cal.App.3d 856, 873.) The general measure of damages for tortious injury to property is "the amount which will compensate for all the detriment proximately caused thereby." (Civ. Code, § 3333.) Putting aside the automatic doubling and potential tripling of damages, the measure for damages to trees is similar to that for property in general—the amount that "would compensate for the actual detriment." (Civ. Code, § 3346.)

The trial court relied on Baccouche's expert, who it found reliable and credible. The expert was a certified arborist, whose specialty is in damage appraisal and evaluation. He used a complex computer program to determine the devaluation of the trees as result of the pruning by Albert. There is no single fixed and inflexible rule for determining the measure of damages for injury to trees. (*Heninger v. Dunn* (1980) 101 Cal.App.3d 858, 862.) Diminution in value—i.e., the difference between the value of property before and after injury—is one measure that has been used. (*Ibid.*) The expert testified that instead of just cutting foliage to six feet off the ground as required by the

14

Fire Department, large trunks were cut off at the property line resulting in a reshaping of the trees to its current bush-like state. Prior to the pruning, the trees had a large canopy of greenery at the top of the tall trunks. He testified that the trees were devalued as a result of damaging cuts by $15,980. Given the extensive pruning Albert inflicted on Baccouche's olive trees while trespassing on his property, we will not second-guess the amount the court selected after carefully considering the evidence before it.

We also reject Albert's contention that the trial court improperly doubled the amount of assessed damages pursuant to Civil Code section 3346, subdivision (a), which applies in cases of injury to trees. "Civil Code section 3346, subdivision (a), states in pertinent part: 'For wrongful injuries to timber, trees, or underwood upon the land of another, or removal thereof, the measure of damages is three times such sum as would compensate for the actual detriment, except that where the trespass was casual or involuntary, or that the defendant in any action brought under this section had probable cause to believe that the land on which the trespass was committed was his own or the land of the person in whose service or by whose direction the act was done, *the measure of damages shall be twice the sum as would compensate for the actual detriment . . . .*'" (Italics added.)" (*Kallis v. Sones, supra,* 208 Cal.App.4th at p. 1281.)

Because the court did "not find malice in connection with the pruning of the trees," it only doubled the damages as required by the statute. The court found Albert had probable cause to believe that the land which the trespass was committed was her own, and properly doubled the damages awarded to Baccouche. (Civ. Code, § 3346, subd. (a).)


**Award of Costs**


Albert contests the costs awarded against her pursuant to Code of Civil Procedure section 998. We have no jurisdiction to address this issue, as Albert did not file a notice of appeal from the postjudgment order.

15

"'If a judgment or order is appealable, an aggrieved party *must* file a *timely* appeal or forever *lose* the opportunity to obtain appellate review.' [Citations.] " (*Norman I. Krug Real Estate Investments, Inc. v. Praszker* (1990) 220 Cal.App.3d, 35, 46.) A postjudgment order which awards costs is separately appealable, and if no appeal is taken from such an order, the appellate court has no jurisdiction to review it. (*Ibid.*) Albert filed her notice of appeal from the judgment on July 1, 2013. The order denying Albert's motion to tax costs was filed on July 18, 2013, and notice of entry of the order was filed on July 24, 2013. Any notice of appeal from the postjudgment costs order had to be filed within 60 days. (Cal. Rules of Court, rule 2(a)(1).) Albert's failure to file a notice of appeal from that order precludes appellate review.

## DISPOSITION

The judgment is affirmed. Plaintiff and respondent Henri Baccouche is awarded his costs on appeal.

KRIEGLER, J.

We concur:

MOSK, Acting P. J.

MINK. J. *

---

\* Retired judge of the Los Angeles County Superior Court assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

16