Filed 11/17/20; Certified for Partial Publication 12/11/20 (order attached)

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

RAYMOND RUSSELL et al.,

    Plaintiffs and Respondents,

v.

CORNEL DORIN MAN et al.,

    Defendants and Appellants.

E072266

(Super.Ct.No. CIVDS1612223)

OPINION

APPEAL from the Superior Court of San Bernardino County.  Keith D. Davis, Judge.  Affirmed as modified with directions.

Cummins & White, Larry M. Arnold, and Margaret R. Miglietta for Defendants and Appellants.

Law Office of David Philipson, David Philipson, Brandon D.B. Howard and Joseph Holmes for Plaintiffs and Respondents.

Cornel Man is a general contractor.  With his wife Victoria, he bought a vacant lot in Big Bear Lake.  Raymond and Fenella Russell owned the house next door.  A "massive" pine tree stood on the property line between them.

The Mans built a house on their property.  They should not have been able to; under the city's development code, almost any house on the property, no matter how configured, would be too close to the tree's "critical root zone."  The city, however, inspected the property and approved the plans.  In the course of the construction, workers digging a trench cut the roots of the tree.  As a result, the tree died.

The Russells therefore filed this action against the Mans.  In a bench trial, the trial court found for the Russells.  The major item of the damages it awarded was $219,756.50, representing $73,265.50, which the trial court found to be the value of the tree, trebled pursuant to Civil Code section 3346.

The Mans appeal.  They contend:

1.  Civil Code section 3346 did not apply, because the Mans injured the tree while on their own property, not while trespassing on the Russells' property.

2.  There was insufficient evidence that the Mans acted willfully and maliciously to support an award of treble damages.

3.  The trial court erred by finding that the value of the tree was $73,265.50.

We agree that under *Scholes v. Lambirth Trucking Co.* (2020) 8 Cal.5th 1094, decided while this appeal was pending, Civil Code section 3346 did not apply.  The Mans remain liable, but only on a negligence theory, and only for untrebled damages. Accordingly, we need not decide whether there was sufficient evidence of willful and malicious conduct.  Finally, we will hold that the trial court's finding regarding the value

of the tree was erroneous and excessive; the only value supported by the evidence was $37,000. We will direct the trial court to modify the judgment accordingly.

I

STATEMENT OF FACTS

The Russells own a home in Big Bear Lake. Sometime before February 2016, the Mans bought the lot next door. At that time, the lot was vacant. Mr. Man is a general contractor and has built several homes in the area.

A Jeffrey pine tree[1] 85 feet tall straddled the lot line between the two properties. The tree was 80 percent on the Russells' property and 20 percent on the Mans' property.[2]

Under the Big Bear Development Code, it was forbidden to dig in a tree's "critical root zone." This was defined as a circle around the tree with a radius of one foot for every inch of the tree's diameter at standard height (four and a half feet above the ground). Here, the tree's diameter at standard height was 40 inches, so its critical root zone had a radius of 40 feet.

Mr. Man hired a draftsman who prepared the building plans and then submitted them to the city. Those plans misrepresented the tree as being behind the proposed

---

[1] The Russells repeatedly state that the Jeffrey pine is an endangered species. The record does not support this. It is actually a species of least concern. (<https://www.iucnredlist.org/fr/species/42371/2975870>, as of Nov. 9, 2020.)

[2] Ms. Russell testified that the tree was entirely on her property. However, her testimony was based on a string the Mans set up during construction; she assumed it was a lot line marker. Mr. Man testified that the string was actually a foundation line marker. He also introduced a topographic survey showing that the tree was on the lot line. The Russells now concede that the tree was "on the . . . property line . . . ."

3

house, rather than to the side. Even according to the plans, however, the house was within the tree's critical root zone. In fact, there was no way to build on the property without killing the tree. Nevertheless, the city inspected the site and issued a building permit.

On February 16, 2016, construction began. There were already several dead branches on the tree. After one of them fell, Mr. Man became concerned about the safety of his workers. On March 1, 2016, he contacted Mr. Russell to discuss the tree. He proposed that they split the cost of taking it down. Mr. Russell refused; he used "eff words" and accused Mr. Man of "destroying everything."

The Mans therefore cut three more dead branches off the tree. To accomplish this, a worker had to enter the Russells' property.[3]

During the construction, a worker entered the Russells' property, drove a single nail into the Russells' house, and tied a string to it (probably as a guideline for the foundations).[4]

Also during the construction, workers[5] dug trenches within five feet of the tree. In or about 2017, construction was complete and the Mans sold the house. Thereafter, the tree died. At the direction of the fire department, the Russells removed the dead tree.

---

[3]     The third cause of action, for trespass, was based on this entry.

[4]     The fourth cause of action, also for trespass, was based on this entry.

[5]     All of the construction workers were employees of Mr. Man. The Mans have never disputed that they were vicariously liable for those workers' acts and omissions.

4

Ruben Green, a consulting arborist, testified as an expert on "diagnos[ing] and tak[ing] care of trees [on] residential properties." He had inspected the tree in May 2016, while construction was still going on. In his opinion, the tree died of dehydration due to the cutting of its roots during construction.

Additional facts pertaining to the value of the tree will be stated in part V, *post*.

II

STATEMENT OF THE CASE

In 2016, the Russells filed this action against the Mans, asserting causes of action for wrongful cutting of timber (Civ. Code, § 3346), negligence, and trespass.

After a bench trial, the trial court entered judgment awarding the Russells a total of $222,767.23 against the Mans. On the first cause of action (wrongful cutting of timber), it awarded $219,756.50; this represented $73,265.50, as the value of the tree, trebled pursuant to Civil Code section 3346. It ruled that this necessarily included any and all damages on the second cause of action (negligence). On the third and fourth causes of action (trespass), it awarded $1 each, for a total of $2. Finally, it awarded $2,968.73 in costs, for a grand total of $222,767.23.

III

THE EVIDENCE OF A TRESPASS

FOR PURPOSES OF DOUBLE OR TREBLE DAMAGES

The Mans contend that Civil Code section 3346 did not apply here. They argue that it applies only when the defendant was trespassing when he or she injured a tree; here, they injured the tree while they were on their own property.

Civil Code section 3346, subdivision (a), as relevant here, provides: "For wrongful injuries to . . . trees, . . . , the measure of damages is three times such sum as would compensate for the actual detriment, except that where the trespass was casual or involuntary, or that [*sic*] the defendant . . . had probable cause to believe that the land on which the trespass was committed was his own or the land of the person in whose service or by whose direction the act was done, the measure of damages shall be twice the sum as would compensate for the actual detriment . . . ."

In addition, Civil Code section 3346, subdivision (c) provides: "Any action for the damages specified by subdivision[] (a) . . . of this section must be commenced within five years from the date of the trespass."

While the trial court cited Civil Code section 3346, that is not the only statute on this topic. Code of Civil Procedure section 733, as relevant here, provides: "Any person who . . . injures any tree or timber on the land of another person, or on the street or highway in front of any person's house, village, or city lot, or cultivated grounds . . . is liable to the owner of such land . . . for treble the amount of damages . . . ."

6

"As sections 733 of the Code of Civil Procedure and 3346 of the Civil Code relate to the same subject matter they must be construed together. Under settled rules of statutory construction they must, insofar as any reasonable construction will permit, be construed to be consistent and not in conflict. Moreover, they must be construed so as to give effect to the whole of each." (*Swall v. Anderson* (1943) 60 Cal.App.2d 825, 829.)

There is language in each statute that would seem to require a trespass. Civil Code section 3346 provides for lesser damages when "the defendant . . . had probable cause to believe that the land on which the trespass was committed was his own . . . ." Even more significantly, it provides that the statute of limitations starts running on "the date of the trespass." Similarly, Code of Civil Procedure section 733 applies only to an injury to a tree "on the land of another person" (or in front of the land of another person).

Accordingly, in *Scholes v. Lambirth Trucking Co.*, *supra*, 8 Cal.5th 1094, our Supreme Court held that Civil Code section 3346 and Code of Civil Procedure section 733 both require a trespass. (*Id*. at p. 1103.) It went on to hold, however, that not just any common law trespass will do. (*Id*. at pp. 1104-1105, 1110-1112.) Rather, these statutes "refer[] not to the common law action of trespass but rather the kind of acts long thought of as 'timber trespass' or 'timber misappropriation' — essentially, intentionally severing or removing timber from another's land without the owner's consent. [Citations.] " (*Id*. at p. 1104; see also *id*. at p. 1105.) Their "purpose . . . is ""to educate blunderers (persons who mistake location of boundary lines) and to discourage rogues (persons who ignore boundary lines), to protect timber from being cut by others than the

7

owner.'"" [Citations.]" (*Id*. at p. 1110.) Thus, they "address[] situations where a person intentionally enters the land in question, either personally or through some agent or instrumentality, to cause direct, intentional injury to timber, trees, or underwood." (*Ibid*.)

The facts here do not show an intentional entry across a boundary line. The tree died as a result of acts by the Mans' workers on the Mans' own land. The Mans' workers did enter the Russells' land twice, once to trim branches and once to drive a nail, but it is undisputed that those trespasses did not kill the tree; they were not the timber trespasses for which the Russells were seeking treble damages.

It could be argued that cutting the roots did constitute a trespass of a sort. Trees are real property. (Civ. Code, §§ 658, 660; *Morrissey v. Morrissey* (1923) 191 Cal. 782, 783; *Wolfe v. Wallace* (1957) 154 Cal.App.2d 523, 527.) Accordingly, tree roots are also real property.

Ordinarily, when the roots of a tree on A's land grow into the land of B, B has the right to cut them. (*Grandona v. Lovdal* (1886) 70 Cal. 161, 162; *Bonde v. Bishop* (1952) 112 Cal.App.2d 1, 5-6; 6 Miller & Starr, Cal. Real Estate (4th ed. 2019) § 17:9 at pp. 17-28—17-30.) This is not treated as a trespass to the tree, because the tree itself is the trespasser — it is an encroachment on B's land. There is an exception, however, when cutting the roots unnecessarily kills or injures the tree. *Booska v. Patel* (1994) 24 Cal.App.4th 1786 held that, under those circumstances, there is no absolute privilege to cut the roots. (*Id*. at pp. 1791-1792.) Moreover, here, the tree was a "line tree" — a tree on the boundary line between two pieces of property. "Trees whose trunks stand partly

8

on the land of two or more coterminous owners, belong to them in common." (Civ. Code, § 834.) "[N]either owner 'is at liberty to cut the tree without the consent of the other, nor to cut away the part which extends into his land, if he thereby injures the common property in the tree.' [Citation.]" (*Kallis v. Sones* (2012) 208 Cal.App.4th 1274, 1278.)

Even assuming, however, that cutting the tree roots constituted a common law trespass, *Scholes* requires more; it requires a timber trespass, which in turn requires an intentional crossing of boundary lines into the land of another to injure timber.

Accordingly, the Mans cannot be liable for treble damages — or any damages at all — on the first cause of action, for wrongful cutting of timber. The trial court, however, also found them liable on the second cause of action, for negligence. Accordingly, they are liable for the actual, untrebled damages.

"[W]hen the evidence is sufficient to sustain some, but not all, of a . . . compensatory damages award, the appellate court may reduce the judgment to the amount supported by the evidence and affirm as modified. [Citations.]" (Eisenberg et al., Cal. Practice Guide: Civil Appeals and Writs (The Rutter Group 2020) ¶ 11:56.1, p. 11-19; see also Code Civ. Proc., §§ 43, 906.) In our disposition, we will reduce the award to single damages.

IV

THE AMOUNT OF DAMAGES

The Mans contend that the trial court erred by finding that the value of the tree was $73,265.50.

A.      *Additional Factual and Procedural Background.*

Green, the Russells' expert witness, appraised the tree, using the trunk formula method — a method that is standard in the industry for valuing a tree too large to be purchased at a nursery.

The trunk formula method starts with the tree's diameter at standard height. That is used to calculate the tree's cross-sectional area.

From that is subtracted a constant of 23.75 square inches, representing the cross-sectional area of the largest replacement tree actually available from a nursery. The net (excess) area is then multiplied by a constant unit cost per square inch. The cost of buying and installing a nursery tree is then added back in.

The result is the "nondepreciated value" of the tree. Green likened the nondepreciated value to the purchase price of a hypothetical tree of equivalent size from a nursery, if one existed.

The nondepreciated value is then reduced according to the tree's species, condition, and location, resulting in the "depreciated value." The depreciated value "is the final value for the lost tree."

Here, the relevant calculations were as shown on the next page:

| Parameter | Value | How Calculated |
|---|---|---|
| Diameter (ins.) | 40 | Appraisal |
| Area (sq. ins.) | 1,149 | $40^2$ x 0.785[6] |
| Standard area | 23.75 | Constant |
| Net area | 1,125.25 | 1,149 - 23.75 |
| Unit cost | $62.00 | Constant |
| Net area cost | $69,765.50 | 1,125.25 x $62 |
| Standard cost | $3,500.00 | Constant |
| Nondepreciated value | $73,265.50 | $69,765.50 + $3,500 |
| Species | 90% | Constant |
| Value adjusted for species | $65,938.95 | $73,265.50 x 0.90 |
| Condition | 80% | Appraisal |
| Value adjusted for condition | $52,751.16 | $65,938.95 x 0.80 |
| Location | 70% | Appraisal |
| Value adjusted for location | $36,925.81 | $52,751.16 x 0.70 |
| Depreciated value | $37,000.00 | $36,925.81 rounded to nearest $100 |

---

**6**    This calculation by Green would seem to be incorrect. The area of a circle 40 inches in diameter would be $20^2$ x $\pi \approx 1,257$ square inches. Perhaps, however, the tree was elliptical rather than circular.

B.    *Discussion.*

""""Whether a plaintiff 'is entitled to a particular measure of damages is a question of law subject to de novo review.  [Citations.]  The amount of damages, on the other hand, is a fact question . . . [and] an award of damages will not be disturbed if it is supported by substantial evidence.'"'  [Citation.]" (*Markow v. Rosner* (2016) 3 Cal.App.5th 1027, 1050.)

Here, it is undisputed that the value of the tree is an appropriate measure of damages.  "'[I]f [the] restoration of the land to a reasonable approximation of its former condition is impossible or impracticable, the landowner may recover the value of the trees or shrubbery, either as timber or for their aesthetic qualities, again without regard to the diminution in the value of the land.  [Citations.]'  [Citation.]" (*Hassoldt v. Patrick Media Group, Inc.* (2000) 84 Cal.App.4th 153, 168.)

Green testified that he valued the tree using the trunk formula method.  That method involves a prescribed series of calculations.  One of the intermediate calculations in that series is the tree's "nondepreciated value."  It represents the hypothetical purchase price of a tree of the same size, if such a tree were available, even though it is not.  However, he also testified that the trunk formula method requires further adjustments to the nondepreciated value, including adjustments for species, condition, and location, in order to arrive at the "depreciated value."  Thus, his report stated that depreciated value "is the final value for the lost tree."  It also stated, "[T]he tree is valued at $37,000."

Consistently with his report, Green testified that $37,000 "is the valuation . . . . Depreciated value."

Thus, the trial court plainly erred by awarding the nondepreciated value. For example, if it accepted the trunk formula method at all, it was required to accept the species adjustment. On this evidence, the single most valuable species of tree, if it were the same size as the tree in this case, could be worth as much as $73,265.50; however, this tree was a Jeffrey pine, a less valuable species, so it was worth only 90 percent of that. For similar reasons, the trial court was required to accept the condition and location adjustments. Otherwise, it was awarding the value of *some different tree*.

We recognize that a trier of fact can reject the testimony of an expert, even when it is uncontradicted — but only if "'it does not do so arbitrarily . . . .' [Citation.]" (*Wells Fargo Bank, N.A. v. 6354 Figarden General Partnership* (2015) 238 Cal.App.4th 370, 392.) The trial court's decision to rely on the nondepreciated value rather than the depreciated value was wholly arbitrary.

We speculate that the root of the problem (if you will forgive the pun) may be that arborists are not accountants. Accountants use depreciation to mean a "method of allocating the cost of a tangible or physical asset over its useful life or life expectancy." (https://www.investopedia.com/terms/d/depreciation.asp, as of Nov. 16, 2020.) Arguably, if that were what it meant here, the trial court could reasonably award the nondepreciated value of the tree, without taking into account a paper loss of value over time. But arborists evidently use the word in a different way. Lowering a tree's

13

estimated value based on its species or its location is hardly what an accountant would call "depreciation."

The trial court did have the option of awarding some compensation, beyond the value of the tree, for lost aesthetic enjoyment. (See *Rony v. Costa* (2012) 210 Cal.App.4th 746, 755-756.) Plainly, however, that is not what it did. Rather, it awarded Green's nondepreciated value, down to the penny.

In our disposition, we will modify the judgment accordingly.

V

DISPOSITION

The judgment is modified as follows. On the first cause of action (wrongful cutting of timber), the judgment is against the Russells and in favor of the Mans. On the second cause of action (negligence), the judgment awards the Russells $37,000 against the Mans. The judgment on the third and fourth causes of action (trespass) and the award of costs remain the same. As thus modified, the judgment is affirmed. The trial court is directed to enter an amended judgment reflecting these modifications. The Mans are awarded costs on appeal against the Russells.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAMIREZ
P. J.

We concur:

CODRINGTON
J.

MENETREZ
J.

14

**CERTIFIED FOR PARTIAL PUBLICATION**

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| RAYMOND RUSSELL et al., | |
| Plaintiffs and Respondents, | E072266 |
| v. | (Super.Ct.No. CIVDS1612223) |
| CORNEL DORIN MAN et al., | ORDER CERTIFYING OPINION FOR PARTIAL PUBLICATION |
| Defendants and Appellants. | |

THE COURT

The opinion in the above-entitled matter, filed on November 17, 2020, was not certified for publication in the Official Reports.

A request has been made, pursuant to California Rules of Court, rule 8.1120(a), for publication of the opinion. It appears that part of the opinion does meet the standard for publication as specified in California Rules of Court, rule 8.1105(c).

We therefore GRANT the request, in part, and ORDER that the opinion is certified for publication, with the exception of part IV.

CERTIFIED FOR PARTIAL PUBLICATION

RAMIREZ

P. J.

We concur:

CODRINGTON

J.

MENETREZ

J.

1

See attached mailing list
MAILING LIST FOR CASE: E072266
Raymond Russell et al. v. Cornel Dorin Man et al.


Superior Court Clerk
San Bernardino County
8303 N. Haven Ave
Rancho Cucamonga, CA 91730


David J. Philipson
Law Office of David Philipson
P.O. Box 2950
42644 Moonridge Road
Big Bear Lake, CA 92315-2950


Brandon Darel Howard
Law Offices of David Philipson
PO Box 2950
42644 Moonridge Road
Big Bear Lake, CA 92315-2950


Margaret R. Miglietta
Cummins & White, LLP
2424 S.E. Bristol Street, Suite 300
Newport Beach, CA 92660


Larry Millard Arnold
Cummins & White LLP
2424 S.E. Bristol Street, Suite 300
Newport Beach, CA 92660